UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



JOHN WILLIS RICHARD, #91-A-0169,

        Plaintiff,

v.

JENNIFER DIGNEAN and THOMAS TANEA,

        Defendants.

**DECISION & ORDER**

6:11-CV-06013 EAW

## INTRODUCTION

*Pro se* Plaintiff John Willis Richard ("Plaintiff"), an inmate currently confined at the Woodbourne Correctional Facility, commenced this action on December 3, 2010, asserting various claims against a number of Department of Corrections and Community Supervision ("DOCCS") personnel pursuant to 42 U.S.C. § 1983. (Dkt. 1). Although this action proceeded through the discovery process, Plaintiff now seeks certain discoverable materials that were purportedly never submitted or were provided in inadequate form in response to various discovery requests, as well as sanctions flowing from Defendants' failure to follow discovery rules and prior court orders. (Dkt. 84).[1]

---

[1]    Plaintiff's motion papers were not timely filed before the conclusion of discovery, purportedly as a result of improper tampering with his prison mailings. While the Court does not opine on the merits of Plaintiff's claims in that regard, the Court nonetheless exercises its discretion to excuse Plaintiff's untimely submission and to afford him the opportunity to litigate his discovery demands on the merits.

Pending before the Court is Plaintiff's motion to compel discovery and for sanctions. (Dkt. 84). For the following reasons, Plaintiff's motion is granted in part and denied in part.

## BACKGROUND

### I.  Summary of Pertinent Procedural History

Plaintiff alleges that Defendants conspired to and committed various instances of discriminatory, retaliatory, and harassing conduct in an effort to unlawfully isolate his cell-block programming. (Dkt. 1). On August 7, 2014, the Court dismissed all defendants from this action with the exception of the two remaining defendants in this matter, Jennifer Dignean ("Dignean") and Thomas Tanea ("Tanea") (collectively, "Defendants"). (Dkt. 22). Accordingly, Plaintiff's second cause of action, alleging violations of the Equal Protection Clause as against both Defendants, and Plaintiff's third cause of action, alleging a First Amendment retaliation claim, remain the sole claims in this action.

On August 27, 2014, Defendants filed an Answer (Dkt. 23), and the case was referred to United States Magistrate Judge Marian W. Payson for all pretrial matters excluding dispositive motions (Dkt. 24). On October 15, 2014, Judge Payson issued a scheduling order requiring Defendants to serve their initial disclosures by December 1, 2014. (Dkt. 26 at ¶ 3). Defendants failed to comply with this court-imposed deadline, serving their disclosures over three months later on March 17, 2015. (Dkt. 31).

On September 3, 2015, this Court denied Plaintiff's motion for reconsideration of its August 7, 2014, Decision and Order. (Dkt. 32; *see* Dkt. 28). The Court also stated that the parties "should confer and submit a jointly proposed amended scheduling order" to

Judge Payson if they believed additional discovery was necessary. (Dkt. 32 at 12). No such joint filing was ever submitted. Subsequently, during a video status conference held on May 12, 2016, Plaintiff indicated that he believed "additional discovery [wa]s required before the case c[ould] be scheduled for trial." (Dkt. 38; *see* Dkt. 37). As a result, the case was re-referred to Judge Payson to supervise ongoing discovery matters. (Dkt. 38).

Between June 2016 and September 2016, Plaintiff served interrogatories and a document request upon Defendants (Dkt. 42; Dkt. 45), and Defendants took Plaintiff's deposition (*see* Dkt. 43). On October 11, 2016, Plaintiff filed a motion to compel Defendants to respond to his discovery demands and sought sanctions for their failure to comply with discovery rules. (Dkt. 46). In response to Plaintiff's motion, Defendants' counsel submitted a copy of Plaintiff's deposition transcript and a copy of "a disciplinary hearing packet regarding a '9/5/2007' incident." (*See* Dkt. 49). Beyond that, Defendants' counsel simply stated that he had "sent discovery demands to [his] clients at their respective facilities and . . . [was] awaiting responses," and he conceded that he had "overlooked" making an extension request to resolve outstanding discovery matters because of "various trial engagements, complex litigation, and late receipt of the plaintiff's deposition transcript." (*Id.* at 2). On January 24, 2017, and February 21, 2017, Defendants filed their initial responses to Plaintiff's interrogatories. (Dkt. 57; Dkt. 58).

On July 20, 2017, Judge Payson issued a Decision and Order granting in part and denying in part Plaintiff's motion to compel and for sanctions. (Dkt. 59). Judge Payson noted that while "[D]efendants have provided some documents responsive to [Plaintiff]'s request in connection with their opposition to this motion, . . . many still appear

outstanding." (*Id.* at 4). At that point in time, Defendants had "not provided [any] formal written response to the requests." (*Id.*). Judge Payson further noted that Defendants had responded to Plaintiff's interrogatories "well after the deadline" had passed. (*Id.* at 5). Judge Payson ordered, among other things, for Defendants "to provide written responses and produce all responsive documents" by August 25, 2017, and for Plaintiff to serve any requests for admissions, or for Defendants to respond to those requests should they have already been served, by the same date. (*Id.*). Otherwise, Defendants were to respond to Plaintiff's requests for admissions within thirty days of service. (*Id.*).

Judge Payson also sanctioned Defendants for "unjustifiably and inexplicably lax" efforts to comply with their discovery obligations. (*See id.*). While Judge Payson denied Plaintiff's requests to dismiss the action or preclude evidence, noting that Defendants' discovery violations "have resulted from their counsel's lack of appropriate diligence, not from any bad faith on his or their parts," she cautioned Defendants that "any further failure to comply with their discovery obligations may result in the imposition of serious sanctions against [D]efendants or [D]efendants' counsel, including the striking of their answer." (*Id.* at 8 (emphasis and footnote omitted)). Judge Payson also awarded Plaintiff his litigation costs "incurred as a result of [D]efendants' delayed discovery responses and the need to file a motion to obtain them." (*Id.* at 9). Plaintiff subsequently filed a request for admissions on November 13, 2017 (Dkt. 70), and Defendants responded to Plaintiff's request on December 15, 2017 (Dkt. 71).

## II.    Plaintiff's Motion to Compel and for Sanctions

On April 16, 2019, with leave of the Court, Plaintiff filed the instant motion. (Dkt. 84). Generally, Plaintiff contends that Defendants failed to respond to his document requests and argues that their interrogatory answers and responses to his requests for admissions are inadequate. Plaintiff further argues that Defendants failed to provide sworn answers to his interrogatories and his requests for admissions and failed to sign their discovery submissions as required by the Federal Rules of Civil Procedure. (*See id.* at 6-7). Plaintiff also challenges a number of Defendants' individual interrogatory responses as evasive, manipulated, and false. (*See id.* at 7-16).

Plaintiff contends that Defendants provided "boilerplate" and improper responses to his requests for admissions and have not properly asserted any applicable legal privilege against any admission so requested. (*See id.* at 17-25). In addition, Plaintiff contends that Defendants' responsive admissions were filed after the applicable deadline. (*Id.* at 31). Plaintiff requests that the Court conclude that Defendants waived their objections to Plaintiff's requests for admissions as a result of this untimely submission. (*Id.* at 31-32).[2] Furthermore, Plaintiff argues that Defendants ignored his request for documents and refused to produce any of the documents he requested. (*See id.* at 25-30).

---

[2]    As noted above, Plaintiff was required to serve his admission requests by August 25, 2017. (Dkt. 59 at 5). However, Plaintiff filed his admission requests on November 13, 2017. (Dkt. 70). Although Defendants' response to Plaintiff's admission requests may have been filed a day or two after the 30-day deadline set in Judge Payson's Order (*see* Dkt. 59 at 5; Dkt. 71), this does not in-and-of-itself warrant the sanctions Plaintiff requests.

Plaintiff also requests that the Court issue appropriate discovery sanctions. Specifically, Plaintiff asks the Court to strike Defendants' Answer and to enter default judgment in his favor. (*Id.* at 33-37; *see* Dkt. 84-2 at 52-63 (Motion for Default Judgment)).[3] In his reply papers, Plaintiff requests that monetary sanctions be awarded in his favor, and that Defendants be denied any additional opportunities to satisfy their discovery obligations. (*See* Dkt. 89 at 8, 13-14; Dkt. 90).

Despite Plaintiff's lengthy motion papers, Defendants' counsel has filed a mere seven-paragraph declaration that does little to address each of Plaintiff's arguments. (Dkt. 88). Defendants' counsel argues that the: (1) "[D]iscovery responses were provided pursuant to the Federal Rules of Civil Procedure"; (2) Interrogatory responses were "declared under penalty of perjury[,] . . . which serves the same purpose and effect of an oath"; (3) Electronic signatures were appropriate; (4) Responses to Plaintiff's requests for admissions were not required to be "under oath [or] signed by a party"; and (5) Interrogatory responses satisfied the "best answer requirement" because they were "declared under penalty of perjury" and Plaintiff "may, at trial, examine . . . [D]efendants about their statements." (*Id.* at ¶¶ 2, 4-7).

On July 23, 2019, the Court held a motion hearing on Plaintiff's motion. (Dkt. 92). Due to several deficiencies left unexplained by Defendants' counsel, the Court required Defendants to file and serve written responses to Plaintiff's document requests and for Tanea to file and serve an amended response to Plaintiff's First Set of Interrogatories. The

---

[3] Plaintiff has withdrawn his requests for a default judgment. (*See* Dkt. 89 at 5 ("I withdraw both motions for default.")).

Court informed the parties that it would issue a written decision on Plaintiff's motion upon its review of Defendants' amended and supplemental responses. (Dkt. 92). On July 26, 2019, Defendants filed a written response to Plaintiff's document requests (Dkt. 93) and Tanea filed an amended response to Plaintiff's interrogatories (Dkt. 94). On August 26, 2019, without leave of the Court, Plaintiff filed additional objections to Defendants' new discovery submissions. (Dkt. 95).[4] This Decision and Order is intended to memorialize the Court's disposition of Plaintiff's motion.

## DISCUSSION

### I. Defendants' Interrogatory Responses Satisfied the Oath Requirement

"The rule governing interrogatories provides, in relevant part, that 'each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.'" *Steptoe v. City of Syracuse*, No. 5:09-CV-1132 (NPM/DEP), 2011 WL 6012941, at *4 (N.D.N.Y. Nov. 1, 2011) (quoting Fed. R. Civ. P. 33(b)(3)), *report and recommendation adopted*, 2011 WL 6012040 (N.D.N.Y. Nov. 30, 2011), *aff'd*, 513 F. App'x 8 (2d Cir. 2013). "The oath requirement applicable to interrogatories has legal significance. Courts have routinely refused to consider interrogatories that do not comport with that mandate." *Id.* at *5 (collecting cases); *see Monclova v. City of New York*, 726 F. App'x 83, 84 (2d Cir. 2018) ("None of Monclova's interrogatories were sworn under oath.

---

[4]     Plaintiff did not request an opportunity to respond to Defendants' amended and supplemental discovery responses, and the Court never granted him any such opportunity. In any event, to the extent Plaintiff reiterates his previous objections to Defendants' purported misconduct, those objections are addressed below as they pertain to Plaintiff's pending motion. (Dkt. 84). To the extent Plaintiff wishes to challenge Defendants' submissions on additional bases, he may file an appropriate motion before trial.

Therefore, the district court did not err in disregarding them."); *Cris v. Fareri*, No. 3:10CV1926(RNC), 2011 WL 13228490, at *1 (D. Conn. Dec. 13, 2011) ("Requiring a party to sign interrogatory responses under oath serves the critical purpose of ensuring that the responding party attests to the truth of the responses." (quotation omitted)).

However, "Rule 33 does not prescribe any particular form of verification." *Zanowic v. Reno*, No. 97Civ.5292(JGK)(HBP), 2000 WL 1376251, at *5 (S.D.N.Y. Sept. 25, 2000). In other words, there is more than one way to satisfy the requirement that interrogatory responses be made under oath. *See Steptoe*, 2011 WL 6012941, at *4 ("The courts that have addressed the issue of the form that an interrogatory oath must take appear to be in agreement that the oath requirement may be satisfied either by having the statement affirming the responses sworn to before a notary public or by providing a declaration pursuant to 28 U.S.C. § 1746.").

> Section 1746 provides that an unsworn matter may be treated as sworn, provided that it is "prove[n] by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the . . . form" of the model declaration provided.

*In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 488 (2d Cir. 2013) (quoting 28 U.S.C. § 1746) (emphasis omitted). Because there is "no material difference" between verifications sworn under oath and a declaration affirmed pursuant to § 1746, *see Zanowic*, 2000 WL 1376251, at *5, Defendants' respective declarations, made "under penalty of perjury," that their interrogatory responses were "true and correct" (*see* Dkt. 84 at 51, 57; *see also* Dkt. 94 at 6), satisfy the oath requirement. *See Cris*, 2011 WL 13228490, at *1 ("The plaintiff must provide a proper oath attesting to the truth of his interrogatory

responses served upon the defendant such as 'Under penalties of perjury, I certify that the foregoing responses to interrogatories are true and correct.'"); *Steptoe*, 2011 WL 6012941, at *4 (stating that if a party chooses to respond to an interrogatory by declaration pursuant to § 1746, "an unverified statement may suffice provided that it specifically states that the document is given under penalty of perjury and is true"); *cf. In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d at 488 ("The district court did not err as a matter of law in interpreting § 1746 to require that a certification be made 'under penalty of perjury.' Thus, the district court properly rejected the interrogatory answers of certain plaintiffs that omitted that language."). Therefore, Plaintiff's assertion that Defendants' interrogatory answers were not properly sworn under penalty of perjury is without merit.

## II.   Defendants' Electronic Signatures Were Appropriate

Plaintiff's objection to Defendants' use of electronic signatures is also unfounded. Defendants each electronically signed the interrogatory answers, and Defendants' counsel electronically signed their responses to Plaintiff's requests for admissions. (Dkt. 84 at 71, 77; Dkt. 84-1 at 17, 37; Dkt. 94 at 6). "[E]lectronic signatures comply with the Administrative Procedures Guide for the Western District of New York." *Myers v. Dolac*, No. 09-CV-6642P, 2013 WL 5175588, at *1 n.4 (W.D.N.Y. Sept. 12, 2013); *see Deleon v. Hoffman*, No. 05-CV-6682 CJS, 2012 WL 75805, at *6 n.6 (W.D.N.Y. Jan. 10, 2012) ("Plaintiff also complains that Defendants['] affidavits are signed electronically, instead of in the Defendants' own handwriting. However, Defendants' electronic signatures are in accordance with the Court's CM/ECF Administrative Procedures, § 2(g)(I)."); *see also*

Western District of New York Administrative Procedures Guide § 2(g)(i). Accordingly, Plaintiff's objection to Defendants' use of electronic signatures is rejected.

## III. Defendants' Responses to Plaintiff's Requests for Admissions Need Not Be Sworn and Signed by the Parties

Plaintiff also contends that Defendants were required to provide sworn statements in response to his admissions requests. (Dkt. 84 at 6-7). Rule 36 of the Federal Rules of Civil Procedure governs requests for admissions, and it provides, in pertinent part, that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party *or its attorney*." Fed. R. Civ. P. 36(a)(3) (emphasis added). The plain language of Rule 36(a)(3) demonstrates that Defendants were not required to sign their responses themselves as parties to this litigation. *See Go v. Rockefeller Univ.*, 280 F.R.D. 165, 180 (S.D.N.Y. 2012) ("The Federal Rules of Civil Procedure do not require that responses to requests for admissions be signed by a party."). In addition, Rule 36 does not require a party to submit his or her responses under oath. Indeed, according to the Advisory Committee Note to the 1970 Amendments to this Rule, "[t]he requirement that the answer to a request for admission be sworn [wa]s deleted[] in favor of a provision that the answer be signed by the party or by his attorney." Fed. R. Civ. P. 36 advisory committee's note to 1970 amendments. As one district court observed, "the certification plaintiff seeks is inherent in the attorney's signature and need not be expressly written in the discovery document." *Go*, 280 F.R.D. at 180 (citing Fed. R. Civ. P. 26(g)(1)).

Therefore, the Court also rejects Plaintiff's argument that Defendants' responses to his admission requests must have been made under oath and signed by the parties.

## IV.     Interrogatories: Best Answer Requirement

> Interrogatories, like other discovery devices, may inquire into any discoverable matter, including facts and contentions. There are many purposes for interrogatories but the general aims are to expeditiously narrow the scope of litigation, reduce the element of surprise, serve as admissions for trial, and in a significant matter avoid unnecessary discovery and minimize the expense.

*Trueman v. N.Y. State Canal Corp.*, No. 1:09-CV-049 (LEK/RFT), 2010 WL 681341, at *2 (N.D.N.Y. Feb. 24, 2010) (footnote omitted). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). "In order to ensure that each interrogatory is answered 'separately' and 'fully,' the responding party is required 'to make an inquiry and obtain information to answer the interrogatories which would include obtaining the information to fully and completely answer the interrogatories. . . .'" *Carl v. Edwards*, No. CV 16-3863 (ADS) (AKT), 2017 WL 4271443, at *3 (E.D.N.Y. Sept. 25, 2017) (quoting *Upstate Shredding, LLC v. Ne. Ferrous, Inc.*, No. 3:12-CV-1015 (LEK/DEP), 2016 WL 865299, at *8 (N.D.N.Y. Mar. 2, 2016)); *see Zanowic*, 2000 WL 1376251, at *3 n.1 ("Plaintiff defends his limited response, in part, by claiming lack of knowledge. . . . In responding to interrogatories, however, a party is under a duty to make a reasonable inquiry concerning the information sought in interrogatories, and a party's failure to describe his efforts to obtain the information sought by plaintiffs renders his responses insufficient."). In other words, "[t]he responding party

must provide the best answer they can based upon current information in their possession." *Trueman*, 2010 WL 681341, at *2.

Furthermore, "[a] district court has broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012), *aff'd sub nom. Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134 (2014). As such, "[m]otions to compel are left to the court's sound discretion." *Mirra v. Jordan*, No. 13-CV-5519 (AT) (KNF), 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016) (citing *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999)).

## A.    Dignean's Interrogatory Responses Were Sufficient

Plaintiff's objections to Dignean's interrogatory responses are without merit. A review of Dignean's responses reveals that she provided substantive responses to almost every one of Plaintiff's interrogatories. (*See* Dkt. 84 at 44-51). While most of Plaintiff's objections challenge the veracity of her answers (*see* Dkt. 84 at 8-13), determining whether interrogatory responses "are false and disingenuous is a conclusion this Court cannot make because it requires a credibility judgment. Credibility determination[s] are not made generally with regard to discovery responses, unless the movant can prove the falsity he claims." *Gaul v. Chrysler Fin. Servs. Ams. LLC*, No. 1:13-cv-433 (TJM/RFT), 2014 WL 1513843, at *4 (N.D.N.Y. Apr. 16, 2014) (citing *Abascal v. Fleckenstein*, No. 06-CV-0349S(Sr), 2010 WL 3834839, at *10 (W.D.N.Y. Sept. 29, 2010)); *see also Richard v. Dignean*, No. 11-CV-6013W, 2017 WL 3083916, at *5 (W.D.N.Y. July 20, 2017) ("Richard appears to challenge the veracity of several statements made by defendants in

their pleadings and other filings. Such challenges are premature and must await resolution by the trier of fact on a dispositive motion or at trial." (citation omitted)).

Although Plaintiff claims to have provided additional documentation that refutes several of Dignean's answers, these materials do not definitively establish that her responses were, in fact, falsely made. (*See* Dkt. 84-2 at 1-12). Plaintiff does appear to demand more detailed responses than were provided, but Plaintiff seeks more than is required from interrogatory responses. While an answer is "supposed to provide more than an idea of what the case or defense is all about[, ][t]his does not necessarily mean . . . that the responding party needs to provide all evidentiary proof or every shred of evidence[.]" *Trueman*, 2010 WL 681341, at *3. Furthermore, Plaintiff's interrogatory requests are not a model of clarity, and, as such, it was not inappropriate for Dignean to indicate that she did not understand the nature of some of the questions posed. (*See* Dkt. 84 at 49 (Responses 18 & 19)). Plaintiff's challenge to Dignean's interrogatory answers boils down to a disagreement with the substance of her answers, but mere "[d]isagreement with a response does not establish its falsehood." *Gaul*, 2014 WL 1513843, at *4.

Accordingly, Plaintiff's challenge to Dignean's interrogatory responses is rejected.

### B.    Tanea's Initial Interrogatory Responses Were Insufficient

As the Court stated during the July 23, 2019, motion hearing, Tanea's initial interrogatory responses were far from adequate. For example, Plaintiff's first interrogatory asked, "who trained you for the program committee chairman position to follow directive in effect in 2007, and prior to 6/14/07," and Tanea's response was that he "was trained by numerous different people." (Dkt. 84 at 53). This interrogatory clearly sought the identity

of those who provided Tanea with particular training, and Tanea's remarkably vague answer did not sufficiently answer this question. *See CRA Holdings US, Inc. v. United States*, No. 15-CV-239W(F), 2018 WL 4001675, at *3 (W.D.N.Y. Aug. 22, 2018) (finding interrogatory response deficient where the defendant requested the plaintiffs to "identify by name those of their employees [p]laintiffs assert performed qualified services on each project," and the plaintiffs merely "provided a list of all employees who worked on each project without indicating which employees performed qualified services on specific projects"). Tanea also responded to several interrogatories relating to DOCCS directives by simply stating: "Don't know without reviewing the directive." (Dkt. 84 at 54 (Responses 5, 6, 7, and 15)). This too constitutes an inadequate response. Tanea was obligated to make a reasonable inquiry to obtain information necessary to fully respond to Plaintiff's interrogatories, which would include reviewing the applicable directive. *See, e.g., Carl*, 2017 WL 4271443, at *3; *Upstate Shredding, LLC*, 2016 WL 865299, at *8; *Zanowic*, 2000 WL 1376251, at *3 n.1. Tanea supplied no reason to conclude that he was unable to do so, *see Carl*, 2017 WL 4271443, at *3, and thus, this response was deficient.

Tanea also answered, "Don't know," in response to several interrogatories asking him to identify documents pertaining to programing assignments and availability sheets. (Dkt. 84 at 54-55 (Responses 11, 12, 13, 14)). While this might very well be a true response, "a boilerplate answer is no better than no response. The responding party must make an effort to answer with the information 'reasonably available to it [and] . . . is not excused from making its disclosure because it has not fully investigated the case. . . .'" *Trueman*, 2010 WL 681341, at *3 (quoting Fed. R. Civ. P. 26(a)(1)(E)).

Because Tanea did not provide any description of his efforts to obtain the information sought by Interrogatories 11-14, *see Braham v. Perelmuter*, No. 3:15CV1094(JCH), 2016 WL 1305118, at *3 (D. Conn. Apr. 1, 2016) ("[D]efendants do not elaborate as to whether the information is available to defendant Wu, or whether he *did* make any attempt to ascertain this information."), Tanea's bare "Don't know" answers were insufficient responses, *see Zanowic*, 2000 WL 1376251, at *3 n.1 (while parties are not required to provide information not known to them, they must make a diligent effort to answer the interrogatories and outline their efforts if unable to obtain the sought after information). Indeed, it appears defense counsel simply sent the interrogatory requests to his client to be completed on his own, without doing what an attorney should do—assisting and counseling his client in the preparation of the responses.

Tanea's initial responses were limited at best, and at worst, were vague and evasive. Not only did Tanea's initial answers fail to adequately respond to Plaintiff's interrogatories, but he also did not demonstrate that he undertook a diligent inquiry in compiling those answers. Therefore, the Court had a sufficient basis to require Tanea to file amended interrogatory responses. (*See* Dkt. 92).

### C. Tanea's Amended Answers Adequately Respond to Plaintiffs' Interrogatories

On July 26, 2019, Tanea submitted amended answers to Plaintiff's interrogatories. (Dkt. 94). A review of Tanea's submission reveals that he has rectified the deficiencies previously identified by the Court. Tanea has now attached the DOCCS directives referenced in several of Plaintiff's interrogatories, and specifically referred to those

policies and procedures in his responses. (*Id.* at ¶¶ 5-7, 15-16; *see id.* at 8-17). Furthermore, Tanea confirmed that he was unable to answer several of the interrogatories because he did not know the answer and was unable to refer to any relevant documents because those records had been destroyed pursuant to DOCCS' policy of destroying certain records after a five-year retention period. (*See id.* at 3-4).

It is evident that Tanea has supplied more substance to the vast majority of his responses. For example, in initially responding to Plaintiff's interrogatory inquiring as to whether Tanea took an oath to abide by DOCCS' rules in Tier Hearings, Tanea merely answered, "Always followed rules/reg." (Dkt. 58 at ¶ 19). Instead of offering an unresponsive answer, Tanea has now explained that while Tier Hearing testimony "is not taken under oath," he has "always followed rules and regulations regarding the facility's program placements for inmates." (Dkt. 94 at ¶ 19). While Tanea was not obligated to provide information unknown to him, he was required to undertake diligent efforts in responding to Plaintiff's interrogatories. To the extent that Plaintiff may disagree with the veracity of Tanea's new responses, any such disagreement does not establish that Tanea's answers are inadequate for discovery purposes. *See, e.g., Richard*, 2017 WL 3083916, at *5; *Gaul*, 2014 WL 1513843, at *4; *Abascal*, 2010 WL 3834839, at *10. Because Tanea's amended submission demonstrates a more thorough response, Tanea's answers satisfy the "best answer" requirement.

## V.  Requests for Admissions

Requests for admissions are unlike discovery devices such as interrogatories or requests for production. As noted above, these requests are governed by Rule 36 of the Federal Rules of Civil Procedure, which provides, in pertinent part, as follows:

> A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to . . . facts, the application of law to fact, or opinions about either; and . . . the genuineness of any described documents.

Fed. R. Civ. P. 36(a)(1). "Discovery pleadings are expected to elicit and expound upon the facts of the matters, whereas, the Requests for Admission essentially, and hopefully, limit the factual issues in the case." *Henry v. Champlain Enters., Inc.*, 212 F.R.D. 73, 77 (N.D.N.Y. 2003). Such requests are intended to "facilitat[e] the proof at trial by weeding out facts and items of proof over which there is no dispute." *Booth Oil Site Admin. Grp. v. Safety-Kleen Corp.*, 194 F.R.D. 76, 79 (W.D.N.Y. 2000) (quotation omitted). In other words, "[t]he purpose of [Rule 36] is to allow for the narrowing or elimination of issues in a case. The rule is not properly speaking a discovery device, rather it is a procedure for obtaining admissions for the record of facts already known by the seeker." *Dubin v. E.F. Hutton Grp. Inc.*, 125 F.R.D. 372, 375 (S.D.N.Y. 1989) (quotation and citation omitted).

"Each request for admissions must be direct, simple and 'limited to singular relevant facts.'" *United States v. Consol. Edison Co. of N.Y.*, No. CV-88-0049 (RJD), 1988 WL 138275, at *2 (E.D.N.Y. Dec. 15, 1988) (quoting *SEC v. Micro-Moisture Controls*, 21 F.R.D. 164, 166 (S.D.N.Y. 1957)); *see Henry*, 212 F.R.D. at 77 ("[T]he requesting party bears the burden of setting forth its requests simply, directly, not vaguely or ambiguously,

and in such a manner that they can be answered with a simple admit or deny without an explanation, and in certain instances, permit a qualification or explanation for purposes of clarification."). "A request to admit covers the full range of information discoverable under Fed. R. Civ. P. 26(b), including matters of facts as well as the application of law to the facts." *Booth Oil Site Admin. Grp.*, 194 F.R.D. at 79. "That said, 'Rule 36, by its express terms, embraces only requests for admissions of fact or of the application of law to fact. . . . To force the defendant to 'admit' [legal conclusions] would only frustrate the purposes for which Rule 36 was drafted.'" *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 432 (S.D.N.Y. 2012) (quoting *Williams v. Krieger*, 61 F.R.D. 142, 144 (S.D.N.Y. 1973)); *see Ross v. Shah*, No. 1:12-CV-1006 (GTS/CFH), 2015 WL 4648002, at *11 n.34 (N.D.N.Y. Aug. 5, 2015) ("[R]equests for admission are not to be employed as a means to establish facts which are obviously in dispute or to answer questions of law. . . ." (quoting *Lakehead Pipe Line Co. v. Am. Home Assur. Co.*, 177 F.R.D. 454, 458 (D. Minn. 1997)).

> A response to a request for admission is inadequate when the respondent fails to make the requested admission and none of the relevant exceptions set forth in Rule 37(c) apply; that is, where a responding party objects to a proper request for admission, makes an evasive denial (i.e., one that does not specifically deny the matter), or makes a response that does not set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter.

*Herrera v. Scully*, 143 F.R.D. 545, 549-50 (S.D.N.Y. 1992) (quotation and emphasis omitted).

Here, Plaintiff argues that Defendants submitted "boilerplate" responses to each one of his admissions requests. (*See* Dkt. 84 at 17-18). While most of Defendants' responses are materially indistinguishable (*see* Dkt. 84-1), Defendants have substantively answered

each request with an express denial. *Cf. Hamilton v. Kerik*, No. 01CV6934GELHBP, 2002 WL 31834428, at *6 (S.D.N.Y. Dec. 17, 2002) (the "defendants' boilerplate response" that the requests' "vague and ambiguous wording . . . does not allow defendants fairly to admit or deny" was insufficient without an explanation as to why an admission or denial was not possible). Similarly, while Defendants make general assertions of legal privilege in objecting to each of Plaintiff's requests, ultimately, Defendants specifically denied each one. *See Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 394, 400 (S.D.N.Y. 2018) (denying motion to compel amended responses to requests for admissions, in part, because the plaintiff denied each request before detailing its objections); *Bernstein v. Principal Life Ins. Co.*, No. 09 Civ. 4925 (CM) (HBP), 2010 WL 4922093, at *4 n.2 (S.D.N.Y. Dec. 2, 2010) (admission responses were adequate where the plaintiffs made general objections but, notwithstanding those objections, denied each request); *cf. Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 515 B.R. 161, 169 n.6 (Bankr. S.D.N.Y. 2014) (finding "boiler plate" objections to requests for admissions insufficient where the respondent failed to provide any specific responses or objections to those requests). Therefore, Plaintiff's objection to Defendants' assertion of legal privilege has no merit where Defendants have formally denied each one of Plaintiff's requests.

Plaintiff's specific challenges to Defendants' responses are also without merit. Plaintiff broadly fashioned his requests for admissions, improperly utilizing them as a discovery tool to obtain further information rather than as a mechanism to narrow the issues. *See, e.g., Ross*, 2015 WL 4648002, at *11 n.34; *Coach, Inc.*, 908 F. Supp. 2d at 432. For example, many of Plaintiff's requests assume the truth of facts that are vigorously

disputed by Defendants and which are critical to Plaintiff's theory of the case, such as the existence of a "block isolation policy." (*See, e.g.*, Dkt. 84-2 at 5-6, 9-11, 13, 16, 20-21, 24-25, 28, 30-31; *see also* Dkt. 84 at 48 (denying that this policy exists), 56 (Tanea averring that he was not aware of such a policy)). Furthermore, many of Plaintiff's requests ask Defendants to admit that they violated specific policies or certain requirements under various laws (*see, e.g.*, Dkt. 84-1 at ¶¶ 2-5, 11, 14-16, 21-23, 27, 32, 34-35), and others require Defendants to concede certain interpretations of legal provisions (*see, e.g., id.* at 8, 11-12, 29-30, 33). These types of requests for admissions constitute an improper use of Rule 36. *See, e.g., Ross*, 2015 WL 4648002, at *11 n.34; *Coach, Inc.*, 908 F. Supp. 2d at 432. Plaintiff also challenges the veracity of many of Defendants' denials, but while Plaintiff "may disagree with these responses, that disagreement does not render the responses inadequate." *Bernstein*, 2010 WL 4922093, at *4; *see, e.g., Richard*, 2017 WL 3083916, at *5.

In addition, several of Plaintiff's requests are not made in the correct form. Whereas proper requests for admissions should be drafted to permit a simple answer—either "admit" or "deny"—unless some qualification is otherwise necessary, *see Henry*, 212 F.R.D. at 77, a number of Plaintiff's requests seek narrative answers or are phrased in a manner that *necessitate* more detailed explanations (*see, e.g.*, Dkt. 84-1 at ¶¶ 6-7, 25-28 (asking "why" or "where" Defendants performed an action), 11, 29 (asking Defendants to "explain in detail" or to "fully explain"), 13, 31 (asking Defendants to "admit in detail"), 21 (asking Defendants to identify an "oral or written policy" and whether they cited to this policy in certain reports)); *see Herrera*, 143 F.R.D. at 549 (stating that a request for admissions

should be phrased so that "it can be admitted or denied *without explanation*" and "should not state half a fact or half-truths which require the answering party to qualify responses" (quotation and citations omitted) (emphasis added)); *see also Thalheim v. Eberheim*, 124 F.R.D. 34, 35 (D. Conn. 1988) ("When passing on a motion to determine the sufficiency of answers or objections, the court obviously *must consider the phraseology of the requests as carefully as that of the answers or objections.*" (emphasis added)).

Even Plaintiff's requests that reference materials available to Defendants are not made in permissible form because they seek admissions relating to the proper interpretation of the documents in question. "The person called upon to make the admission should not be required to go through the document and assume the responsibility of determining what are 'relevant matters of fact' and then decide what admissions he should make." *Micro-Moisture Controls*, 21 F.R.D. at 166 (quotation and citation omitted); *see Consol. Edison Co. of N.Y.*, 1988 WL 138275, at *2 ("An attempt to seek admissions to the contents of documents incorporated by reference is improper, except when warranted by exceptional circumstances."). Requests that require an answering party to concede the meaning of certain provisions drawn out of context are likely to generate confusion and will unjustly force the answering party to determine, at their peril, what components of the document are material to their response. Such requests are also likely to encourage the answering party to submit heavily qualified responses. *See generally Herrera*, 143 F.R.D. at 549.

Therefore, the Court rejects Plaintiff's assertion that Defendants' responses to his requests for admissions were insufficient.

## VI. Requests for Document Production

"Rule 34(a) of the Federal Rules of Civil Procedure delineates the type of items that a requesting party may 'inspect, copy, test or sample' when such items are in the 'responding party's possession, custody, or control[.]'" *Carl*, 2017 WL 4271443, at *4 (quoting Fed. R. Civ. P. 34(a)).

As noted above, Plaintiff filed his document requests on September 8, 2016. (Dkt. 45). In her July 20, 2017, Decision and Order, Judge Payson stated that "many" of Plaintiff's production requests "still appear outstanding" and ordered Defendants to "provide written responses and *produce* all responsive documents by no later than August 25, 2017." (Dkt. 59 at 4). Although it appears that Defendants previously produced the disciplinary packet relating to an incident occurring on September 5, 2007 (Dkt. 49 at ¶ 4; *see id.* at 26-41; *see also* Dkt. 45 at 2), Defendants failed to submit any other documents responsive to Plaintiff's request for production by August 25, 2017. Indeed, Defendants' papers filed in opposition to Plaintiff's now pending motion wholly failed to address Plaintiff's document requests. (*See* Dkt. 88).

As the Court indicated at the July 23, 2019, motion hearing, Rule 34(b) provides that "[t]he party to whom the request is directed *must respond in writing* within 30 days after being served or—if the request was delivered under Rule 26(d)(2)—within 30 days after the parties' first Rule 26(f) conference." Fed. R. Civ. P. 34(b)(2)(A) (emphasis added). By failing to provide any written response to Plaintiff's document requests, Defendants failed to comply with Rule 34(b) and Judge Payson's July 20, 2017, Decision and Order.

Accordingly, the Court ordered Defendants to submit a written response to Plaintiff's request for document production. (Dkt. 92). On July 26, 2019, Defendants filed their response (Dkt. 93), producing: two DOCCS directives; the aforementioned disciplinary packet; grievance packets for grievances filed on August 22, 2007, and September 18, 2007; and a DOCCS employee manual relating to employee duties. (*Id.* at 7-191). Defendants also explained that many of the other requested materials no longer exist because they were destroyed pursuant to DOCCS' policy of retaining certain records for five years before they are destroyed. (*Id.* at 2-5). In addition, Defendants claim that they do not have "custody, control and possession of responsive disciplinary reports" pertaining to either Dignean or Tanea for the periods of January 2007 through September 2007 and April 2007 through June 2008, respectively. (*Id.* at ¶¶ 16, 18).

Defendants previously offered no explanation for their failure to produce the requested documents. Defendants have now complied with Rule 34's requirement that a written submission be filed in response to each document request. *See* Fed. R. Civ. P. 34. Furthermore, many of the records Plaintiff requests pertain to time periods which took place about a decade ago. Defendants respond that they cannot produce many of those documents because they were destroyed pursuant to DOCCS' record retention and disposition policy. (Dkt. 93 at 2-5); *see Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) ("[A] party is not obliged to produce, at the risk of sanctions, documents that it does not possess or cannot obtain."); *see generally Brown v. Pritchard*, No. 09CV214S, 2011 WL 5330574, at *4 (W.D.N.Y. Nov. 4, 2011) ("Plaintiff here has not established gross negligence in [DOCCS] using its normal record retention policies in

destroying the pre-January 2008 grievances."). Accordingly, Defendants appear to have finally complied with this Court's direction to submit a written response to Plaintiff's request for production.

## VII. Plaintiff's Request for Sanctions

### A. Legal Standard

"Rule 37 of the Federal Rules of Civil Procedure authorizes the imposition of a variety of different sanctions on a party who fails to comply with his or her discovery obligations." *Richard*, 2017 WL 3083916, at *3; *see Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 68 (E.D.N.Y. 2012) ("A party found to have violated its Rule 26 obligations is subject to sanctions under Rule 37."). "Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses." *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999); *see Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006) ("A district court has wide discretion to impose sanctions, including severe sanctions, under Federal Rule of Civil Procedure 37. . . ."). And "[w]here, as here, the nature of the alleged breach of a discovery obligation is the non-production of evidence, a district court has broad discretion in fashioning an appropriate sanction[.]" *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).

> In imposing Rule 37 sanctions, . . . courts properly consider various factors, including "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of noncompliance."

*Funk v. Belneftekhim*, 861 F.3d 354, 366 (2d Cir. 2017) (quoting *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010)).

"Disciplinary sanctions for failure to comply with Rule 37 are intended to serve three purposes." *Arnold v. Krause, Inc.*, 233 F.R.D. 126, 129-30 (W.D.N.Y. 2005).

> First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault.

*Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988). "Even when a party finally (albeit belatedly) complies with discovery orders after sanctions are imposed, these purposes may still justify the sanctions[.]" *S. New England Tel. Co.*, 624 F.3d at 149 (emphasis omitted). "[I]f parties are allowed to flout their obligations, choosing to wait to make a response until a trial court has lost patience with them, the effect will be to embroil trial judges in day-to-day supervision of discovery, a result directly contrary to the overall scheme of the federal discovery rules." *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1068 (2d Cir. 1979) (quotation omitted).

## B. Dismissal is Not an Appropriate Sanction Under the Circumstances

"Dismissal of a lawsuit, or its analogue, striking an answer, is appropriate if 'there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party.'" *Occhino v. Citigroup Inc.*, No. CV-03-5259 (CPS), 2005 WL 2076588, at *11 (E.D.N.Y. Aug. 26, 2005) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). This high bar is set because dismissal is considered a "drastic remedy that should be

imposed only in extreme circumstances." *John B. Hull, Inc. v. Waterbury Petroleum Prod., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988) (quotation omitted).

Judge Payson previously issued sanctions against Defendants, determining that they waived any objection to Plaintiff's document and interrogatory requests, awarding Plaintiff reimbursement of his litigation costs in moving to compel Defendants to comply with their discovery obligations, and cautioning them that subsequent discovery violations could result in the imposition of serious sanctions. (*See* Dkt. 59 at 6-9). Although Defendants have now complied with this Court's order to file a written response to Plaintiff's document requests and amended interrogatory answers, this fact does not preclude the imposition of additional sanctions. *See also Cine Forty-Second St. Theatre Corp.*, 602 F.2d at (noting that the "plaintiff's hopelessly belated compliance should not be accorded great weight" because "[a]ny other conclusion would encourage dilatory tactics, and compliance with discovery orders would come only when the backs of counsel and the litigants were against the wall"); *Lujan*, 284 F.R.D. at 68 ("Rule 37(c) sanctions are not limited to initial disclosure violations but may be predicated on a party's failure to amend its prior discovery responses.").

Based upon the papers submitted, it is unclear whether Defendants' failure to comply with their discovery obligations and Judge Payson's July 20, 2017, Decision and Order is a function of intentional obstruction or mere incompetence. In either event, the failures are egregious and have consumed valuable judicial resources in an effort to get Defendants to comply with basic discovery obligations. Nonetheless, while the Court is extremely disturbed by Defendants' blatant disregard for court-ordered deadlines and their

discovery responsibilities, it concludes that dismissal of Defendants' Answer would not be an appropriate remedy (and indeed, Plaintiff has withdrawn this request (*see* Dkt. 89 at 5)).

## C.  While a Monetary Award is Improper, Reimbursement of Reasonable Litigation Costs is an Appropriate Sanction

Unlike his previous motion for sanctions, Plaintiff specifically requests the imposition of monetary sanctions. (*See* Dkt. 89 at 8, 13-14; Dkt. 90); *cf. Richard*, 2017 WL 3083916, at *4 ("Richard has not specifically requested reimbursement of litigation costs. . . ."). "The Second Circuit has held that the imposition of Rule 37(a) monetary sanctions is appropriate as a disciplinary measure 'to ensure that a party will not benefit from its own failure to comply with discovery.'" *Creative Res. Grp. of N.J., Inc. v. Creative Res. Grp., Inc.*, 212 F.R.D. 94, 103 (E.D.N.Y. 2002) (quoting *Update Art, Inc.*, 843 F.2d at 71). Nonetheless, "the Second Circuit has held that a *pro se* plaintiff is not allowed to recover attorney's fees for representing [him]self[.]" *Lozano v. Peace*, No. CV 05-0174(SJF)(ETB), 2005 WL 1629644, at *3 (E.D.N.Y. July 11, 2005) (citing *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 694 (2d Cir. 1998)). Although Plaintiff claims to have found case law where a *pro se* litigant was awarded a monetary sanction, a review of his case citations reveals that he is mistaken. None of the cases Plaintiff relies upon stand for the proposition that a *pro se* plaintiff is entitled to a monetary award as a discovery sanction. *Cf. Woodward v. Holtzman*, 329 F.R.D. 16, 24 (W.D.N.Y. 2018) (awarding monetary sanctions *against* a *pro se* plaintiff); *Interscope Records v. Barbosa*, No. 05-CV-5864(DGT)(RML), 2007 WL 14332, at *3 (E.D.N.Y. Jan. 3, 2007) (same); *De Ponce v. Buxbaum*, No. 90 Civ. 6344 (SWK) (BAL), 1995 WL 92324, at *1 (S.D.N.Y. Mar. 7, 1995)

(imposing Rule 11 sanctions on counseled party), *aff'd sub nom. Banco de Ponce v. Buxbaum*, 99 F.3d 402 (2d Cir. 1995). While *Smith v. Fischer*, No. 07-CV-6350CJS, 2008 WL 5129863, at *1 (W.D.N.Y. Dec. 5, 2008) hits closest to the mark, that case did not authorize a monetary award; rather, the court simply denied a requested monetary sanction without prejudice with permission to renew "in the event that defendants fail[ed] to comply" with the court's order. *Id.* Therefore, the Court denies Plaintiff's request for a monetary award of $9,000 as a discovery sanction.

However, as Judge Payson previously noted, "*[p]ro se* litigants may be entitled . . . to reimbursement of documented and reasonable litigation costs." *Richard*, 2017 WL 3083916, at *4 (citing *Jermosen v. Smith*, 733 F. Supp. 13, 14 (W.D.N.Y. 1990)). Because Defendants have inexplicably failed to comply with discovery rules and Judge Payson's July 20, 2017, Decision and Order, Plaintiff is entitled to the reimbursement of costs expended in compelling compliance with their discovery obligations. Accordingly, Plaintiff may submit a sworn affidavit detailing his costs, accompanied by any documentation demonstration his expenditures, within thirty (30) days of the filing of this Decision and Order. Defendants will have fourteen (14) days from the filing of Plaintiff's affidavit to submit a response.

### D. Preclusion of Evidence/Spoliation Sanctions

It is apparent that the reimbursement of litigation costs previously failed to motivate Defendants' compliance with their discovery obligations. While "preclusion of evidence is a 'harsh remedy'" that "should be imposed only in rare situations," *Cates v. Trs. of Columbia Univ. in City of N.Y.*, 330 F.R.D. 369, 373 (S.D.N.Y. 2019) (quoting *Izzo v. ING*

*Life Ins. & Annuity Co.*, 235 F.R.D. 177, 186 (E.D.N.Y. 2005)), the Second Circuit "recognizes that preclusion may be necessary to achieve the purpose of Rule 37 as a credible deterrent 'rather than a "paper tiger,"'" *Arnold*, 233 F.R.D. at 130 (quoting *Update Art, Inc.*, 843 F.2d at 71).

> In determining whether to exercise its discretion to preclude evidence under Rule 37, courts examine (1) the party's explanation for the failure to comply with the discovery rules; (2) the importance of the precluded evidence; (3) the prejudice suffered by the opposing party as a result of having to prepare to address the new evidence; and (4) the possibility of a continuance.

*Lujan*, 284 F.R.D. at 68 (citing *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)).

In addition, a vast number of Defendants' discovery responses suggest that the documents Plaintiff has requested were destroyed pursuant to DOCCS' retention and disposition policy, which apparently permits the destruction of certain records after five years. (Dkt. 93 at 2-5). In fact, several of Tanea's amended interrogatory responses indicate that a more complete answer was not possible because the materials identified in the interrogatories no longer exist for this very reason. (Dkt. 94 at ¶¶ 11-14).

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West*, 167 F.3d at 779. In analyzing a spoliation issue, courts consider "whether the party accused of the spoliation or destruction had a duty to preserve requested documents, whether the party acted willfully, negligently or in bad faith, and the degree of prejudice inflicted upon the party seeking the discovery as a result of the spoliative conduct at issue." *W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc.*, No. 98-CV-838S(F), 2000 WL 1843258, at *10 (W.D.N.Y. Nov. 2, 2000) (citations omitted). "Traditional sanctions for

spoliation include preclusion, monetary sanctions, or an adverse inference instruction." *Liberman v. FedEx Ground Package Sys., Inc.*, No. 09 CV 2423 (RML), 2011 WL 145474, at *5 (E.D.N.Y. Jan. 18, 2011). "[T]rial judges have wide discretion to impose sanctions for spoliation even in cases not involving 'outrageous culpability.'" *Matteo v. Kohl's Dep't Stores, Inc.*, 533 F. App'x 1, 3 (2d Cir. 2013) (quoting *Reilly*, 181 F.3d at 267-68).

"A party seeking sanctions for destroyed evidence must first show that 'the party having control over the evidence . . . had an obligation to preserve it at the time it was destroyed.'" *Liberman*, 2011 WL 145474, at *3 (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998), *overruled on other grounds by Rotella v. Wood*, 528 U.S. 549 (2000)). "An obligation to preserve evidence 'arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.'" *NCA Inv'rs Liquidated Tr. v. Dimenna*, No. 3:16-cv-156 (VAB), 2019 WL 2720746, at *5 (D. Conn. June 27, 2019) (quoting *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)). "Once a court has concluded that a party was under an obligation to preserve the evidence that it destroyed, it must then consider whether the evidence was intentionally destroyed, and the likely contents of that evidence." *Fujitsu Ltd.*, 247 F.3d at 436.

Here, Defendants offer no explanation for why they did not respond to Plaintiff's request for documents, which was filed almost three years ago, *see* Fed. R. Civ. P. 37(d)(2) ("A failure . . . [to respond to a request for inspection under Rule 34] is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)."), or Judge Payson's Order, which

was issued over two years ago, until the Court compelled them to do so. Moreover, although Defendants contend that the majority of the records Plaintiff requests were destroyed after a five-year retention period pursuant to DOCCS policy, it appears that at least some of these documents were destroyed while this action was pending.

As a result, the Court concludes that preclusion and spoliation sanctions are appropriate. However, the exact contours of that relief cannot be determined based on the record before the Court. Accordingly, the Court intends to conduct an evidentiary hearing in advance of the jury trial so that it can better assess the appropriate sanctions to be imposed and make a ruling in that regard before commencement of the trial.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel discovery and for sanctions (Dkt. 84) is granted in part and denied in part. Plaintiff must submit a sworn affidavit detailing the reasonable costs he incurred in litigating this motion, accompanied by any documentation demonstrating his expenditures, no later than thirty (30) days from this Decision and Order. Defendants will have fourteen (14) days upon the filing of Plaintiff's affidavit to submit a response. A status conference is hereby set for Thursday, November 14, 2019, at 11:00 A.M. in US Courthouse, 100 State Street, Rochester NY 14614, before the undersigned, for the purpose of selecting a trial date. Plaintiff may appear be video and a separate video scheduling order will be issued in the regard.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:     October 4, 2019
           Rochester, New York