UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOHN WILLIS RICHARD, #91-A-0169,

                Plaintiff,

      v.

JENNIFER DIGNEAN and THOMAS TANEA,

                Defendants.
_____

**DECISION AND ORDER**

6:11-CV-06013 EAW

# BACKGROUND

*Pro se* plaintiff John Willis Richard ("Plaintiff"), an inmate currently confined at the Woodbourne Correctional Facility, has asserted various claims against defendants Jennifer Dignean ("Dignean") and Thomas Tanea ("Tanea"), employees of the New York Department of Corrections and Community Supervision ("DOCCS"), pursuant to 42 U.S.C. § 1983. (Dkt. 1). On April 16, 2019, Plaintiff filed a motion to compel discovery and for sanctions flowing from Defendants' failure to follow discovery rules and prior court orders (Dkt. 84), which the Court granted in part and denied in part on October 4, 2019 (Dkt. 96) (the "October Decision"). The background of this matter is set forth in detail in the October Decision, familiarity with which is assumed for purposes of the instant Decision and Order. In the October Decision, the Court concluded sanctions were warranted as a result of Defendants' spoliation of evidence but ordered an evidentiary hearing to decide the appropriate sanctions to be imposed. (*Id.* at 31).

The evidentiary hearing was held on December 17, 2019. (Dkt. 103). For the following reasons, the Court concludes an adverse inference instruction is warranted as to

- 1 -

certain spoliated evidence. The Court further awards Plaintiff $124.92 for reimbursement of costs.

## DISCUSSION

### I. Spoliation

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). As the Second Circuit has explained:

> [A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (citation omitted).

"The party seeking sanctions bears the burden of establishing all elements of a claim for spoliation of evidence." *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 120 (S.D.N.Y. 2008) (citation omitted); *see also Dilworth v. Goldberg*, 3 F. Supp. 3d 198, 200 (S.D.N.Y. 2014) ("A party seeking spoliation sanctions has the burden of establishing the elements of a spoliation claim by a preponderance of the evidence."). "The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis." *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001).

The above rules apply to tangible evidence, including physical documents. However, Federal Rule of Civil Procedure 37(e) provides a distinct standard for evaluating a failure to preserve electronically stored information. In particular, Rule 37(e) provides as follows:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
>> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>>
>> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>>
>>> (A) presume that the lost information was unfavorable to the party;
>>>
>>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>>
>>> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). Under Rule 37(e), in determining the appropriate sanction for the failure to preserve ESI, the Court must assess: (1) whether Defendants took "reasonable steps" to preserve the lost ESI; (2) whether the information can be restored or replaced through additional discovery; (3) whether Plaintiff has been prejudiced by the loss of the information; and (4) whether Defendants acted with the intent to deprive Plaintiff of the information's use. *See CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 495-502 (S.D.N.Y. 2016).

In the October Decision, the Court found that Defendants had apparently engaged in spoliation of evidence. (Dkt. 96 at 30-31). The purpose of the evidentiary hearing was to ascertain the scope of and reasons for such spoliation, in order to determine the appropriate remedial sanctions. (*Id*. at 31). Based on the evidence presented at the evidentiary hearing and for the reasons discussed below, the Court finds that an adverse inference instruction is warranted with respect to the destruction of certain physical documents.

A.     **Relevant Facts**

Before setting out its legal analysis, the Court briefly summarizes the salient facts set forth in the October Decision and developed at the evidentiary hearing. Plaintiff served a request for production of documents on Defendants in the summer of 2016. (Dkt. 96 at 3; *see* Dkt. 45 (request for production of documents dated July 20, 2016, and received by the Court on September 8, 2016)). Defendants failed to respond to Plaintiff's request for production, which resulted in Magistrate Judge Marian W. Payson granting a motion to compel on July 20, 2017. (Dkt. 59). Judge Payson ordered Defendants to provide written responses and produce all responsive documents by August 25, 2017. (*Id*. at 5). Defendants did not comply with Judge Payson's order. Plaintiff then filed a second motion to compel on April 16, 2019 (Dkt. 84), and at a hearing on July 23, 2019, the Court directed Defendants to file and serve written responses to the request for production (*see* Dkt. 96 at 6).

Defendants finally served and filed written responses to Plaintiff's document requests on July 26, 2019. (Dkt. 93). In their filing, Defendants responded to requests for

production 6, 7, 8, 9, 10, 11, 12, 13, 14, 17, 19, and 20 by stating: "Does not exist. According to the Department's Retention and Disposition of Records Policy, these records are retained for 5 years and destroyed." (*Id.*). These requests for production were addressed to three general categories of documents: "cell block move sheets," "'kipy' system and/or open program availability sheets," and grievances filed against Defendants. (*Id.*).

At the evidentiary hearing, additional information was presented regarding these three kinds of documents. As to the cell block move sheets, Jeffrey Minnerly ("Minnerly"), the Deputy Superintendent for Administration at the Five Points Correctional Facility ("Five Points"), explained that such documents record an inmate's cell location. Minnerly further testified that in his personal experience, such documents were destroyed on a daily basis at Five Points. On cross-examination, Plaintiff pointed out that DOCCS Directive 2011[1], entitled "Disposition of Department Records," provides that "[a]ny . . . records documenting inmate movement, work locations, or housing" are to be retained at the facility for five years. Minnerly testified that he did not believe cell block move sheets would fall into that category, and that in his opinion what Directive 2011 was referring to were records of inmate movement between different areas of the facility, such as going to a work location or to sick call. Minnerly also indicated that each unit in the facility would have a physical logbook that would record inmates moving in and out of a particular block, and that such logbooks would be retained for five years per Directive 2011.

---

[1] A copy of Directive 2011 was admitted into evidence as Defendants' Exhibit D.

The testimony at the evidentiary hearing further established that "KIPY" is an electronic program used by DOCCS to record what job listing activities an inmate was participating in at a given time. Dignean, a supervising offender rehabilitation coordinator for DOCCS, testified that open programming availability sheets are printouts made from the KIPY program and were destroyed on a daily basis. However, Dignean was unaware of whether electronic copies of past open programming availability sheets were accessible via the KIPY program or were otherwise backed up.

Finally, with respect to grievances, Minnerly testified that these documents are retained for three years after they become inactive. There is a three-step process for review of a grievance within DOCCS, and a grievance does not become inactive until it is finally resolved or closed.

With these facts established, the Court assesses first the appropriate sanction for failure to preserve physical documents and then the appropriate sanction for the failure to preserve ESI.

### B. Failure to Preserve Documents

#### 1. Control over the Evidence

As an initial matter, the Court finds that Defendants had "control" over evidence held by DOCCS for purposes of the spoliation inquiry. "[E]ven where a party . . . lacks actual physical possession or custody of requested documents . . . such party may nevertheless be found to have control of the documents . . . if the party is legally entitled to the documents or has the practical ability to acquire the documents from a third-party. . . ." *Gross v. Lunduski*, 304 F.R.D. 136, 142 (W.D.N.Y. 2014). Courts in this

District have held that the relationship between DOCCS and its employees is "sufficiently closely coordinated" to find that DOCCS employees have control over evidence held by DOCCS. *Guillory v. Skelly*, No. 12-CV-00847S(F), 2014 WL 4542468, at *8 (W.D.N.Y. Sept. 11, 2014); *see also Vigliotti v. Selsky*, No. 08-CV-00875 M, 2013 WL 3354423, at *4 (W.D.N.Y. July 3, 2013) (DOCCS employees "had sufficient nexus to DOCCS" to arrange for the inspection of prison); *see also Stanbro v. Westchester Cty. Health Care Corp.*, No. 19-CIV-10857 KMK JCM, 2021 WL 3863396, at *6 (S.D.N.Y. Aug. 27, 2021) ("[F]ederal district courts have found that . . . state correctional departments and municipalities ultimately bear responsibility for preserving evidence and litigating cases filed by prisoners, and as such, a state correctional department's failure to preserve evidence may be imputed to individual officer defendants in order to avoid unfair prejudice to inmate litigants. . . . Several courts in this circuit have similarly opined on the unique relationship between DOCCS and its correctional officers in the context of spoliated evidence." (quotations omitted)).

### 2. **Duty to Preserve**

"An obligation to preserve evidence 'arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.'" *NCA Inv'rs Liquidated Tr. v. Dimenna*, No. 3:16-cv-156 (VAB), 2019 WL 2720746, at *5 (D. Conn. June 27, 2019) (quoting *Fujitsu Ltd.*, 247 F.3d at 436). In other words, a party is required "to preserve what it knows, or reasonably should know, is relevant to the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the

subject of a pending discovery request." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003).

Here, Defendants appeared in this matter in June 2011. (*See* Dkt. 14). This is accordingly the latest possible date by which they were on notice of this litigation and the matters involved therein. Because Plaintiff's complaint relates to actions taken in 2007, any documents that DOCCS retains for five years should have been available and preserved at that point.

The Court further finds that the complaint in this matter put Defendants on notice that any extant cell block move sheets, open program availability sheets, and unit logbooks documenting movement between cell blocks were relevant and needed to be preserved. Plaintiff's complaint expressly alleges that Dignean refused to move him to the "10-block" or to allow him to participate in open jobs outside of the 9-block because of his race and religion and that Tanea retaliated against him by refusing to place him on the waiting list for the "10-block." (Dkt. 1 at 9-10). Documents reflecting inmate movements between cell blocks and programming assignments such as those requested by Plaintiff are plainly relevant to those claims.

The Court does not credit Minnerly's testimony that the cell block move sheets were destroyed on a daily basis. Although Minnerly claimed to have personal knowledge to that effect, his explanation as to how he had obtained that knowledge was not credible. Further, Minnerly's explanation as to why such documents would not fall within Directive 2011's requirement that all "[a]ny . . . records documenting inmate movement, work locations, or housing" be maintained for five years did not make sense and was not credible. Instead,

- 8 -

the Court credits Defendants' representation in their responses to Plaintiff's request for production that these documents were retained for five years and then destroyed. Accordingly, the Court finds by a preponderance of the evidence that the cell block move sheets requested by Defendant should have been preserved.

The Court does credit Minnerly's testimony that each unit had a physical logbook documenting inmate movement between blocks and that such logbooks were maintained for five years before being destroyed. This testimony was clearly based on Minnerly's own personal knowledge. The Court further finds by a preponderance of the evidence that the logbook document inmate movement between blocks in Plaintiff's unit during the relevant time period should have been preserved.

However, the Court credits Dignean's testimony that the physical copies of the open program availability sheets were destroyed on a daily basis. Dignean's testimony was based on her own personal knowledge. Further, while Defendants stated in their response to Plaintiff's requests for production that "[t]he 'kipy' system and/or program availability sheets" were retained for five years, Dignean testified that she was not personally involved in drafting that response and had not seen it before the evidentiary hearing. Moreover, the compound nature of the question and lack of clarity regarding how the records within the KIPY program itself are stored and maintained provides context for how an incorrect answer was provided. Because the physical copies of the open program availability sheets for the relevant time period were destroyed on a daily basis, Defendants cannot be faulted for having failed to preserve them once put on notice of Plaintiff's claims.

Finally, the Court does not find that Plaintiff's allegations put Defendants on notice that they need to retain all other grievances that had been filed against them. Plaintiff did not allege a pattern or practice of wrongdoing by Defendants against other inmates in his complaint, nor did he identify other inmate grievances as substantiating his claim—he instead identified discrete instances on which he claimed to have been discriminated against. The Court does not find that the mere assertion of a discrimination claim against a DOCCS employee is sufficient to trigger a duty to preserve all grievances asserted against that individual. *See Zubulake*, 220 F.R.D. at 217 (noting that the imposition of an overly broad preservation duty would "cripple [entities] . . . that are almost always involved in litigation").

Based on these findings, the Court will proceed with the analysis with respect to the cell block move sheets and the logbook.

### 3. <u>Culpable State of Mind</u>

"A culpable state of mind may be satisfied by a showing that the destruction was undertaken in bad faith, or was the result of either gross negligence or simple negligence." *Wilson v. Hauck*, 141 F. Supp. 3d 226, 230 (W.D.N.Y. 2015) (citing *Residential Funding Corp.*, 306 F.3d at 108). Upon notice of litigation, the failure to issue a litigation hold can constitute gross negligence. *See Herman v. City of New York*, 334 F.R.D. 377, 384 (E.D.N.Y. 2020) ("Gross negligence may exist where a party failed to take widely-recognized steps to preserve materials relevant to a claim, such as failing to implement a litigation hold or preventing the destruction of files pursuant to a pre-existing recycling policy."); *Crown Castle USA Inc. v. Fred A. Nudd Corp.*, No. 05-CV-6163T, 2010 WL

1286366, at *12-13 (W.D.N.Y. Mar. 31, 2009) (plaintiff grossly negligent for failing to implement litigation hold), *adopted*, 2010 WL 4027780 (W.D.N.Y. Oct. 14, 2010). Here, the Court finds by a preponderance of the evidence that no litigation hold was instituted. Instead, Defendants' Exhibits A, B, and C, admitted at the evidentiary hearing, demonstrate that defense counsel identified only a few specific documents and hearing tapes that were to be located and copied.

Further, even had a litigation hold been properly initiated, that "is only the beginning of a party's discovery obligations." *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 437 (S.D.N.Y. 2010). "Once a 'litigation hold' is in place, a party and its counsel must make certain that all sources of potentially relevant information are identified and placed 'on hold.' Then, counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched." *Id.* (quotations and alterations omitted). None of these steps were taken in this case, nor do Defendants appear to have taken any other steps, beyond the limited requested by defense counsel discussed above, to ensure that relevant evidence was retained.

On the record before it, the Court easily finds by a preponderance of the evidence that Defendants acted with gross negligence in failing to preserve the cell block move sheets and the logbook.

### 4. Relevance of Evidence

With regard to the third factor, "[t]he burden falls on the 'prejudiced party' to produce 'some evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed [evidence].'"

*Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 108 (2d Cir. 2001) (quoting *Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998)). "In this context, the test for relevance is more than what is necessary to find relevance under Rule 401 of the Federal Rules of Evidence." *Slater v. Lacapruccia*, No. 13-CV-1079S, 2019 WL 1723515, at *5 (W.D.N.Y. April 18, 2019) (citing *Residential Funding Corp.*, 306 F.3d at 108-09).

"Relevance may be assumed where the breaching party acted in bad faith or with gross negligence." *Mule v. 3-D Bldg. & Constr. Mgmt. Corp.*, No. CV 18-1997 JS AKT, 2021 WL 2788432, at *14 (E.D.N.Y. July 2, 2021) (citation omitted). "By contrast, when the destruction of evidence is negligent, relevance must be proven through extrinsic evidence by the party seeking sanctions." *Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 439 (S.D.N.Y. 2009). "This corroboration requirement is . . . necessary where the destruction was merely negligent, since in those cases it cannot be inferred from the conduct of the spoliator that the evidence would even have been harmful." *Zubulake*, 220 F.R.D. at 221 (quotation omitted).  However, "[t]o shift the burden to the innocent party to describe or produce what has been lost as a result of the opposing party's willful or grossly negligent conduct is inappropriate because it incentivizes bad behavior on the part of would-be spoliators.  That is, it would allow parties who have destroyed evidence to profit from that destruction." *Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 509 (S.D.N.Y. 2013) (quotation omitted).

Here, the Court finds Defendants' gross negligence sufficiently egregious to support the assumption of relevance.  As explained above, Defendants took no meaningful steps whatsoever to preserve the cell block move sheets and the logbook, including by failing to

institute an appropriate litigation hold. Defendants' total abrogation of their discovery obligations presents a circumstance in which relevance may be assumed.

For all these reasons, with respect to the cell block move sheets and the logbook, the Court finds that the requirements for imposition of an adverse inference instruction due to spoliation are satisfied. The form of that adverse inference instruction will be determined at the time of trial. *See Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) (explaining that "an adverse inference should serve the function, insofar as possible, of restoring the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party").

C.     **Failure to Preserve ESI**

The Court turns next to the apparent failure to preserve ESI stored in the KIPY program. As explained above, under Rule 37(e), the Court can impose sanctions for the failure to preserve ESI only if there is a showing of prejudice. Further, the Court can impose the most serious sanctions, including an adverse inference instruction, only if Defendants acted with the intent to deprive Plaintiff of the information's use in this litigation. The Court finds that neither of these criteria are satisfied here.

"Rule 37(e)(1) . . . does not place a burden of proving or disproving prejudice on one party or the other, and leaves judges with discretion to determine how best to assess prejudice in particular cases." *Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15CV9363 (ALC) (DF), 2018 WL 1512055, at *12 (S.D.N.Y. Mar. 12, 2018) (quotations and original alteration omitted). Here, it is unclear what ESI could have been obtained from the KIPY program at the time the instant lawsuit was commenced. Dignean testified

that there was no way for end users of the KIPY program to retrieve past versions of the information served therein. While Defendants did not take any steps to further investigate whether backup copies of prior KIPY records existed or whether there was a way to retrieve information that was not apparent to an end user, the Court is not prepared, on the record before it, to determine that these failures prejudiced Plaintiff.

Further, there is insufficient evidence before the Court to support a finding of intent to deprive. "[A] party may be found to have acted with an intent to deprive within the meaning of Rule 37(e)(2) where (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator." *Moody v. CSX Transportation, Inc.*, 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017) (citation omitted). Here, there is no indication in the record before the Court that Defendants took an affirmative act to destroy any ESI within the KIPY program. Defendants were certainly at least negligent in failing to take steps to preserve such ESI, but that is not sufficient for an imposition of sanctions under Rule 37(e)(2). *See id*.

For these reasons, the Court does not find the imposition of sanctions under Rule 37(e) is warranted due to the failure to preserve ESI from the KIPY program.

## II. Reimbursement of Costs

In the October Decision, the Court found that Plaintiff was entitled to "reimbursement of costs expended in compelling [Defendants'] compliance with their discovery obligations" under Federal Rule of Civil Procedure 37(a). (Dkt. 96 at 28). The Court afforded Plaintiff 30 days to submit a sworn affidavit detailing such costs, along with any supporting documents. (*Id.*). Defendants were given 14 days from such filing to submit a response. (*Id.*).

On November 4, 2019, Plaintiff filed a declaration seeking $124.92 in costs, with supporting documentation. (Dkt. 99). Defendants did not file any response. Having reviewed Plaintiff's submission, the Court finds an award of $124.92 in costs is warranted.

## CONCLUSION

For the reasons set forth above, the Court finds that an adverse inference instruction is warranted with respect to Defendants' spoliation of the cell block move sheets and the logbook documenting inmate movement between blocks. The Court will decide the form of the adverse inference instruction at the time of trial.

Plaintiff is awarded $124.92 in costs as a sanction under Rule 37(a). Defendants shall pay this sum to Plaintiff within 30 days of entry of this Decision and Order.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:     December 7, 2021
           Rochester, New York