UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHN WILLIS RICHARD, #91-A-0169,

Plaintiff,

v.

JENNIFER DIGNEAN and
THOMAS TANEA,

Defendants.

**DECISION & ORDER**

6:11-CV-06013 EAW

## INTRODUCTION

*Pro se* Plaintiff John Willis Richard ("Plaintiff"), an inmate currently confined at the Gouverneur Correctional Facility, commenced this action on December 3, 2010, pursuant to 42 U.S.C. § 1983. (Dkt. 1). He asserted various claims against a number of Department of Corrections and Community Supervision ("DOCCS") personnel, alleging that they conspired to and committed various instances of discriminatory, retaliatory, and harassing conduct in an effort to unlawfully isolate his cell-block programming. (Dkt. 1). On August 7, 2014, the Court dismissed all defendants from this action with the exception of two remaining defendants: Senior Corrections Counselors Jennifer Dignean ("Dignean") and Thomas Tanea ("Tanea") (collectively, "Defendants") at Five Points Correctional Facility ("Five Points"). (Dkt. 22).

Pending before the Court is Defendants' motion for summary judgment (Dkt. 129) and Plaintiff's motion for miscellaneous relief (Dkt. 139). For the following reasons,

Defendants' motion for summary judgment is denied and Plaintiff's motion for miscellaneous relief is denied in part and denied without prejudice in part.

## BACKGROUND

The following facts are taken from Defendants' statement of material facts (Dkt. 129-1), Plaintiff's counter-statement of facts (Dkt. 153 at 3-16),[1] and the exhibits submitted by the parties. Where a fact is disputed, the Court has noted the same.

At all times relative to the incidents in his complaint, Plaintiff was incarcerated in the 9-Block at Five Points. (Dkt. 129-1 at ¶ 6). He had previously been housed in the 10-Block at Five Points for a period of approximately 18 months but was transferred to the 9-Block as a result of a disciplinary incident involving violent conduct and fighting in the mess hall. (Dkt. 129-1 at ¶ 9; Dkt. 129-4 at 89).

In March of 2007, Plaintiff met with Dignean who offered him a job in 9-Block but Plaintiff turned it down. (Dkt. 129-1 at ¶ 7). Plaintiff desired a job in 10-Block, where he formerly was housed and felt more comfortable. (Dkt. 129-1 at ¶ 8; Dkt. 129-4 at 89).

---

[1] Although Plaintiff acknowledges that the Local Rules require that a party file a responding statement of material facts in opposition to a summary judgment motion, *see* L. R. Civ. P. 56(a)(2) ("The papers opposing a motion for summary judgment shall include a response to each numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs and, if necessary, additional paragraphs containing a short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried. Each numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement."), Plaintiff explains that he is being denied his legal materials at his current facility and as a result, could not cite to Defendants' exact paragraph citations in his submission and was forced to respond from memory. (*See* Dkt. 153 at 1-2). In light of Plaintiff's *pro se* status, detailed submissions, and lack of objection from Defendants, the Court opts not to penalize Plaintiff for a failure to adhere to this Local Rule.

Plaintiff challenged Dignean's contention that there was a facility policy preventing him from obtaining employment in 10-Block and contends that she responded with racial and religious slurs and insults. (Dkt. 153 at ¶ 2; Dkt. 129-4 at 14).

On March 28, 2007, Plaintiff filed grievance FPT-17029-07 related to the denial of employment outside his cellblock, citing "racial and attempted religious discrimination and harassment." (Dkt. 129-1 at ¶ 13; Dkt. 153 at ¶ 2; Dkt. 129-4 at 13). Plaintiff's grievance was denied on April 14, 2007 (Dkt. 129-4 at 17), and a final determination issued on May 23, 2007, which stated: "CORC advises the grievant that housing unit jobs are given to inmates living on that particular housing unit. The grievant was offered a job as a porter, recreation aide or utility gang worker on 9 block, but refused." (Dkt. 129-1 at ¶ 13; Dkt. 129-4 at 10).

Plaintiff continued to decline employment opportunities offered to him in the 9-Block. (Dkt. 129-1 at ¶ 15). On June 6, 2007, Plaintiff met with Tanea, who informed Plaintiff that he was required to take a job in 9-Block and could not decline simply because he preferred a different job. (*Id.*). Tanea wrote up Plaintiff with a misbehavior report on June 14, 2007, for his refusal to take the offered positions. (*Id.* at ¶ 16; Dkt. 129-4 at 34, 69). A disciplinary hearing was held on the misbehavior report and Plaintiff argued that the misbehavior report was in retaliation for complaints he had filed against Dignean. (Dkt. 129-4 at 35). Tanea testified at the disciplinary hearing and denied Plaintiff's retaliation allegations. (Dkt. 129-1 at ¶ 19; Dkt. 129-4 at 37). Tanea stated that there was a policy that program assignments were based on the housing block but acknowledged that it was not in writing that Plaintiff had to "remain in 9 Block as far as the program assignment's

concerned." (Dkt. 129-1 at ¶ 19; Dkt. 129-4 at 39). Dignean also testified at the disciplinary hearing. (Dkt. 129-1 at ¶ 20; Dkt. 129-4 at 40). She similarly denied the retaliation allegations and testified that she did not believe that there was a written policy that Plaintiff "has to remain in 9 building as far as a program assignment is concerned as he resides in 9 building." (Dkt. 129-1 at ¶ 20; Dkt. 129-4 at 40). Plaintiff was found guilty of program committee violations and sentenced to 30 days keeplock. (Dkt. 129-1 at ¶ 20). Plaintiff's appeal was denied. (*Id.* at ¶ 21).

Plaintiff filed other grievances as a result of his exchange with Tanea, including FPT-10871-07. In addition, Plaintiff wrote Tanea multiple letters of complaint and when Tanea did not respond to his letters, Plaintiff filed grievance FPT-17830-07 on August 22, 2007, stating that he did not receive a "callout" to date and the grievance committee responded that Plaintiff would be placed on "call out" to speak with the program committee. (Dkt. 153 at ¶ 30).

Plaintiff met with Tanea again on September 5, 2007. (Dkt. 129-1 at ¶ 22; Dkt. 129-4 at 100). Plaintiff was again offered jobs in 9-Block, which he again declined. (Dkt. 129-1 at ¶ 22). Plaintiff was issued another misbehavior report by Tanea on September 5, 2007, and again found guilty. (*Id.* at ¶ 22). Plaintiff was sentenced to 90 days in the SHU, appealed, and ultimately transferred from Five Points. (*Id.* at ¶ 22; Dkt. 129-4 at 102).

**PROCEDURAL HISTORY**

Plaintiff commenced this action on December 3, 2010, in the Northern District of New York. (Dkt. 1). On January 6, 2011, the case was transferred to this district. (Dkt. 6). Following an initial screening of Plaintiff's complaint on March 30, 2011, Plaintiff was

permitted to proceed *in forma pauperis* and service on the defendants was directed. (Dkt. 11). On August 7, 2014, the Court granted in part and denied in part a motion to dismiss and dismissed all defendants from this action with the exception of Dignean and Tanea. (Dkt. 22). The Decision and Order held that Plaintiff's second cause of action, alleging violations of the Equal Protection Clause as against both Defendants, and Plaintiff's third cause of action, alleging a First Amendment retaliation claim against Tanea, remain the sole claims in this action. (*Id.*). On August 27, 2014, Defendants filed an answer (Dkt. 23), and the case was referred to United States Magistrate Judge Marian W. Payson for all pretrial matters excluding dispositive motions (Dkt. 24).

Following a number of discovery-related issues, on July 20, 2017, Judge Payson issued a Decision and Order granting in part and denying in part Plaintiff's motion to compel and for sanctions. (Dkt. 59). Judge Payson ordered, among other things, for Defendants to provide all responsive documents and respond to Plaintiff's requests for admission and also sanctioned Defendants for "unjustifiably and inexplicably lax" efforts to comply with their discovery obligations. (*See id.*).

On April 16, 2019, Plaintiff filed another motion to compel discovery and for sanctions. (Dkt. 84). On October 4, 2019, this Court issued a Decision and Order granting in part and denying in part the motion to compel and for sanctions. (Dkt. 96). In it, the Court concluded that preclusion and spoliation sanctions were appropriate, subject to an evidentiary hearing. (*Id.* at 31). An evidentiary hearing was held on December 17, 2019. (Dkt. 103). On December 7, 2021, the Court issued a Decision and Order concluding that an adverse inference instruction was warranted with respect to the destruction of certain

physical documents, including specifically the cell block move sheets and the logbook documenting inmate movement between blocks. (Dkt. 111). The Court held that "the form of that adverse inference instruction will be determined at the time of trial." (*Id.* at 13 (citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) (explaining that "an adverse inference should serve the function, insofar as possible, of restoring the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party")).

Defendants filed the instant motion for summary judgment on July 29, 2022. (Dkt. 129). Plaintiff's deadline to respond was extended by the Court upon Plaintiff's request multiple times. On December 5, 2022, Plaintiff filed a motion seeking miscellaneous relief, including a request that the Court make findings as to certain facts and alleged admissions by Defendants and issue a warning to Defendants regarding potential sanctions. (Dkt. 139). On January 9, 2023, Defendants filed their opposition to Plaintiff's motion. (Dkt. 149). Plaintiff was afforded one further extension of time to respond to the motion for summary judgment and filed his response on February 2, 2023. (Dkt. 153). Defendants filed their reply on February 15, 2023. (Dkt. 155).

## DISCUSSION

### I. DEFENDANTS' SUMMARY JUDGMENT MOTION

#### A. Legal Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp*., 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp*., 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc*., 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co*., 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 247-48 (1986).

"Where one party is proceeding *pro se*, the Court reads the *pro se* party's papers liberally and interprets them 'to raise the strongest arguments that they suggest.'" *Thorne v. Lewis*, No. 3:19cv24 (VLB), 2021 WL 4324475, at *2 (D. Conn. Sept. 23, 2021) (quoting *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted)). However, a *pro se* litigant may not rely on allegations unsupported by admissible evidence to overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

### B. Plaintiff's Equal Protection Claim Pursuant to 42 U.S.C. § 1983

Plaintiff's second cause of action alleges that Defendants denied him equal protection by restricting him to employment opportunities in 9-block when similarly-situated inmates were not restricted to employment within their cellblock. Specifically, Plaintiff claims that the employment placement discrimination was based on his race and religion.

The Equal Protection Clause of the United States Constitution mandates equal protection under the law, and that similarly-situated persons are treated equally. "To establish an Equal Protection claim, a plaintiff 'must show that he was treated differently than other persons who were similarly situated and that such differential treatment was either without a rational basis (a 'class of one' claim) or was motivated by an intent to discriminate on an impermissible basis (a selective enforcement claim).'" *Benjamin v. Town of Islip*, No. 20 CV 56 (ENV)(LB), 2021 WL 8344132, at *6 (E.D.N.Y. Aug. 12, 2021) (quoting *Casciani v. Nesbitt*, 392 Fed. App'x 887, 888 (2d Cir. 2010)), *report and*

*recommendation adopted*, No. 20-CV-56 (ENV) (LB), 2022 WL 1090608 (E.D.N.Y. Apr. 12, 2022). In order to prevail on a selective enforcement equal protection claim, "a plaintiff must prove that: (1) he was treated differently from similarly situated individuals and (2) that the difference in or discriminatory treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Burton v. Salerno*, No. 3:20-CV-1926 (VAB), 2023 WL 184238, at *15 (D. Conn. Jan. 13, 2023) (quoting *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)). "A plaintiff generally must satisfy both elements to establish a claim of selective enforcement." *Carminucci v. Pennelle*, No. 18 CV 2936 (LMS), 2020 WL 4735172, at *22 (S.D.N.Y. Aug. 14, 2020) (quoting *LaTrieste Restaurant v. Village of Port Chester*, 188 F.3d 65, 70 (2d Cir. 1999)).

"Although a prison inmate 'has no right to any particular prison job, . . . prison officials cannot discriminate against him on the basis of his race in work assignments.'" *See Reynolds v. Barrett*, 741 F. Supp. 2d 416, 425 (W.D.N.Y. 2010) (quoting *LaBounty v. Adler*, No. 89 CIV. 4242 (RO), 1999 WL 961776, at *2 (S.D.N.Y. Oct. 21, 1999)), *aff'd,* 685 F.3d 193 (2d Cir. 2012). Racial and/or religious discrimination in prisoner job assignments is a violation of the Equal Protection Clause. *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991); *see also Vazquez v. City of New York*, No. 121CV01573 (PAE)(VF), 2022 WL 2704763, at *14 (S.D.N.Y. June 17, 2022) ("Inmates can be assigned jobs, and removed from them, for virtually any reason, provided that such decisions are not based on the inmate's race or religion."), *report and recommendation adopted*, No. 21CIV1573 (PAE)(VF), 2022 WL 17370156 (S.D.N.Y. Dec. 2, 2022). "A plaintiff can

plead intentional discrimination on the basis of race in several ways, including by identifying a law or policy that expressly classifies persons on the basis of race, a facially neutral law or policy that has been applied in an intentionally discriminatory manner, or a facially neutral statute or policy that has an adverse effect and is motivated by discriminatory animus." *Bussey v. Phillips*, 419 F. Supp. 2d 569, 581 (S.D.N.Y. 2006). Furthermore, "[e]qual protection claims under § 1983 cannot be based solely on the disparate impact of a facially neutral policy. It is well established that . . . racially discriminatory intent or purpose is required to [allege] a violation of the Equal Protection clause." *Reynolds*, 685 F.3d at 201 (internal quotations and citation omitted) (alteration in original). Evidence of intentional discrimination may be direct and explicitly reflect discriminatory animus or it may be less direct, with an example being where "a defendant may give preferential treatment to others who are similarly situated to the plaintiff but who are not the same race as the plaintiff." *Wang v. Quiros*, No. 3:21-CV-1133 (JAM), 2023 WL 1779960, at *3 (D. Conn. Feb. 6, 2023) (citation omitted)).

Defendants argue that they are entitled to summary judgment on this claim on the grounds that Plaintiff "has not alleged in anything beyond a conclusory manner that other similarly situated individuals were treated differently from himself." (Dkt. 129-5 at 5). Specifically, they contend that although Plaintiff alleges that other inmates of different races or religions were programmed outside of their blocks, that he "has never identified a single person, regardless of race, who even asked to be employed in a porter/utility job outside their Block" and "certainly has not identified anyone claiming they were denied (or granted) such an accommodation based on their skin color." (*Id.* at 6). In addition,

Defendants rely on the Five Points Facilities Operation Manual ("FOM"), which indicates that incarcerated individuals are permitted to move cells for substance abuse programming ("RSAT"), anger management programming ("ART"), or mess hall jobs, but does not specifically provide for a similar cell change for porter or utilities jobs. (*Id.* at 7; FOM ("Inmates who have been assigned to ART or RSAT or the Messhall, will move to appropriate blocks.")).[2] They argue that this policy negates any notion that Plaintiff's denial of access to employment in 10-Block was related to his race or religion.

While Plaintiff does not identify a specific instance in which a particular inmate outside his protected class was permitted to seek employment outside of his or her cellblock, he contends that other inmates were not isolated by programming or restricted to an employment position in his or her cellblock as he was, and that other inmates were allowed placement on an employment waiting list, which he was denied. To support his claim that he was selectively treated as compared to others similarly situated, Plaintiff points to the cell block move sheets and the logbook documenting inmate movement between blocks, which were not preserved but for which the Court previously ruled that an adverse inference instruction is warranted. (Dkt. 111 at 15); *see also Elavon, Inc. v. Ne. Advance Techs., Inc.*, No. 15CIV7985 (KMK)(PED), 2022 WL 1175039, at *1 (S.D.N.Y.

---

[2] As explained further herein, Plaintiff argues that the FOM policy relied on by Defendants in support of their motion for summary judgment was never provided to him during the course of discovery. Because the Court's ruling on this claim rests not on the existence of a written policy but instead on the existence of genuine issues of material fact as to whether any policy, written or oral, was applied uniformly by Defendants in employment assignments for inmates, it need not resolve the question of whether Defendants can sufficiently justify their reliance on a written policy not provided in the course of discovery on the instant motion.

Apr. 20, 2022) ("An adverse inference jury instruction is 'an inference that the evidence would have been unfavorable to the party responsible for its destruction.'" (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)). The purpose of an adverse inference instruction is three-fold: "(1) deterring parties from destroying evidence; (2) placing the risk of an erroneous evaluation of the content of the destroyed evidence on the party responsible for its destruction; and (3) restoring the party harmed by the loss of evidence helpful to its case to where the party would have been in the absence of spoliation." *Id.*

In *Odyssey Marine Expl., Inc. v. Shipwrecked & Abandoned SS Mantola*, 425 F. Supp. 3d 287 (S.D.N.Y. 2019), the district court explained the role of an adverse inference in connection with a summary judgment motion:

> Although an adverse inference can assist a party's case, the Court will not allow an adverse inference to be used here to fill a wholesale void as to a central element of Odyssey's case. *Cf. Gill v. Arab Bank*, PLC, 893 F. Supp. 2d 542, 553 (E.D.N.Y. 2012) ("[A]n adverse inference, without more, cannot satisfy a non-moving party's burden on summary judgment 'to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'" (quoting *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548)). Such an adverse inference can only be used "at the margin, where the innocent party has produced some (not insubstantial) evidence in support of his claim." *Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998) (examining adverse inference in context of non-moving party attempting to survive summary judgment).

*Id.* at 296; *see also Tourmaline Partners, LLC v. Monaco*, No. 3:13-CV-00108 (VAB), 2016 WL 614361, at *5 (D. Conn. Feb. 16, 2016) ("The Court recognizes that an adverse inference alone cannot defeat a motion for summary judgment. . . . But in 'borderline

cases,' in combination with 'not insubstantial' evidence, an adverse inference can raise a genuine dispute of material fact." (quotation and citation omitted)).

Here, Defendants argue that Plaintiff cannot rely on the missing cell move sheets to support his claim because the use of the cell move sheets "would be tantamount to a fishing expedition, seeking information Plaintiff hopes to find, without any good-faith basis to believe the information is actually there." (Dkt. 155-1 at 4). While that may have been a potential argument as to the discoverability of the information, that question has long been resolved and the Court has already ruled that an adverse inference as to those documents is warranted. Defendants further argue that the cell move sheets did not even contain programming information and rely on testimony from the Five Points' Deputy Superintendent for Administration, who when asked if the program information was contained on cell move sheets, answered, "I do not believe the program is on there. It's a cell move." (Dkt. 155 at 41). Even if this testimony could be fairly read to indicate that the cell move sheets did not contain specific information as to inmate location, the same witness also testified that physical unit logbooks, also subject to the adverse inference, would appear to document movement between cell blocks:

> Q. And what is a housing area log pertain to?
>
> A. There is a physical log book for the housing unit.
>
> Q. And what does it log in?
>
> A. There are many things that are logged into there, all of the unit activity every day.
>
> Q. So inmates moving in and moving out of a block, am I correct?

A. That would be listed in the log book, yes, for that unit.

(Dkt. 155 at 41-42). Based on the full reading of this witness's testimony, it is disingenuous for Defendants to now argue that it is inconceivable that the information subject to the adverse instruction could provide information relevant to Plaintiff's opposition to summary judgment. As a result, the adverse inference here does serve to support a conclusion that genuine issues of material fact exist as to whether substantially similar inmates were treated differently from how Plaintiff was treated.

Moreover, Plaintiff has presented evidence that in addition to his treatment being different from comparators, the differential treatment was the result of discrimination. Plaintiff's testimony that Dignean made religious and racially-charged statements during his job placement meeting provides support for his contention that the explanation for the disparate treatment was his race and religion. Plaintiff documented those allegations in his grievance filed shortly after the meeting with Dignean. While Defendants contend that there existed a written facility policy in the FOM that directed that inmates could not be moved for a utilities or porter position, as noted, Plaintiff has raised factual issues as to whether that policy was applied uniformly that are not subject to resolution at this stage of the proceedings.

In sum, construing the facts in the light most favorable to Plaintiff, particularly in light of Plaintiff's *pro se* status, the Court finds that genuine issues of material fact exist as to whether Plaintiff was treated differently than similarly-situated individuals and if that selective treatment was the result of discrimination. The alleged statements made by Dignean relating to race and religion coupled with the adverse inference in connection with

the missing documents provides grounds to deny Defendants' motion summary judgment as to Plaintiff's equal protection claim.

### C. Plaintiff's First Amendment Retaliation Claim

Plaintiff's third cause of action alleges violations of his First Amendment rights arising from Tanea's issuance of false disciplinary reports in retaliation for Plaintiff's filing of grievances against him.[3]

It is axiomatic that prison officials may not retaliate against prisoners for exercising their constitutional rights. *Mt. Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977). While a prisoner "has no general constitutional right to be free from being falsely accused in a misbehavior report," *Stewart v. Ayala*, No. 3:20-CV-1938 (CSH), 2022 WL 4356467, at *4 (D. Conn. Sept. 20, 2022) (quoting *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997)), there are "two exceptions to this rule: when an inmate is 'able to show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the disciplinary report was issued in retaliation for exercising a constitutionally protected right,'" *id.* (quoting *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015)).

---

3 The Court previously dismissed that portion of Plaintiff's claim for retaliation which alleged that Defendants' denial of employment outside of his cellblock was to retaliate for Plaintiff's filing of grievances. In its Decision and Order on Defendants' motion to dismiss, the Court ruled that Plaintiff failed to plausibly allege that the adverse action was causally related to his grievance filings. (Dkt. 22 at 23). To the extent Defendants' argument on the instant motion appears directed to the dismissed portion of Plaintiff's retaliation claim as a basis for summary judgment (Dkt. 155-1 at 1 ("The gravamen of the retaliation argument was that Plaintiff was alleging Mr. Tanea denied him a 10-Block job because of a grievance he filed against Ms. Dignean several months prior, with no evidence Mr. Tanea even knew of the existence of that grievance."), this issue has previously been resolved and will not be discussed herein.

Courts regularly acknowledge that retaliation claims by prisoners are "prone to abuse," since prisoners could potentially claim retaliation based on any decision they disagree with. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996); *see also Vazquez v. City of New York*, No. 1:21-CV-01573 (PAE)(VF), 2022 WL 2704763, at *13 (S.D.N.Y. June 17, 2022) ("A prisoner's claims of retaliation must be examined with particular care, however, because they are prone to abuse since prisoners can claim retaliation for every decision they dislike." (quotation omitted)), *adopted*, 2022 WL 2704469 (S.D.N.Y. July 11, 2022). "Accordingly, even though [p]risoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right, courts must examine a prisoner's retaliation claim with skepticism and particular care." *Speaks v. Saeed*, No. 14-CV-06826 (JMA)(AYS), 2022 WL 541767, at *7 (E.D.N.Y. Feb. 23, 2022) (quotation and citation omitted).

"To prevail on a First Amendment retaliation claim, an inmate must establish '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected [conduct] and the adverse action.'" *Hayes v. Dahlke*, 976 F.3d 259, 272 (2d Cir. 2020) (quoting *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014)).

With regard to the first element, it is well-settled and undisputed by the parties that filing a grievance is a protected activity. *Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001) ("It is undisputed that retaliation by prison officials against an inmate for the filing of a grievance can act as a deprivation of a constitutionally protected right.").

To constitute the second element of an adverse action, the retaliatory conduct must be the type that "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Brandon v. Kinter*, No. 913CV00939 (BKS/ATB), 2023 WL 2382637, at *20 (N.D.N.Y. Mar. 6, 2023) (quotation omitted). Here the filing of misbehavior reports that resulted in substantive keeplock time satisfies Plaintiff's second element for purposes of the instant motion and Defendants do not argue otherwise. *See Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004) (holding that filing of false misbehavior report resulting in three week sentence in keeplock constituted adverse action to satisfy second element of retaliation claim); *Bishop v. Stotler*, No. 921CV1027 (GLS/DJS), 2023 WL 1867720, at *3 (N.D.N.Y. Jan. 19, 2023) ("The filing of a false misbehavior report that results in some form of punishment that cannot be labeled *de minimis* has been found sufficient to constitute adverse action."), *report and recommendation adopted*, No. 921CV1027 (GLS/DJS), 2023 WL 1861564 (N.D.N.Y. Feb. 9, 2023); *Reed v. Doe No. 1*, No. 9:11-CV-0250 TJM/DEP, 2012 WL 4486086, at *5 (N.D.N.Y. July 26, 2012) (finding that the "filing of a false misbehavior report can qualify as an adverse action for the purposes of a First Amendment retaliation" where the report resulted in a fourteen-day term in keeplock confinement), *report and recommendation adopted*, 2012 WL 4486085 (N.D.N.Y. Sept. 27, 2012).

In order to satisfy the third element, "a plaintiff must show that the speech played a substantial part in the adverse action, in response to which the defendant official can then show that the [adverse] action would have occurred regardless." *Hayes*, 976 F.3d at 272 (citation and quotation omitted). "To establish such a connection courts consider: (1) the

temporal proximity between the protected activity and the alleged retaliatory act; (2) the prisoner's prior good disciplinary record; (3) the prisoner's vindication at his disciplinary hearing; and (4) the defendant's statements regarding their motive. *Bishop*, 2023 WL 1867720, at *3 (citing *Colon v. Coughlin*, 58 F.3d 865, 872-73 (1995)). Direct evidence of a causal connection is not required, and circumstantial evidence, including "among other things, the temporal proximity between speech and an adverse action and subsequent findings that the adverse action was unjustified," can suffice. *Morrow v. Bauersfeld*, No. 21-2928-CV, 2022 WL 17097590, at *2 (2d Cir. Nov. 22, 2022).

Here, a genuine dispute of material fact exists regarding the causal connection between Plaintiff's protected conduct of filing grievances and Tanea's alleged adverse action of filing misbehavior reports.

In terms of temporal proximity, "a plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Brandon*, 2023 WL 2382637, at *21 (quoting *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)). "While there is no 'bright line . . . defin[ing] the outer limits' of the 'temporal relationship,' courts in the Second Circuit have held that an adverse action taken as much as eight months after the protected activity indicated a causal connection." *Burrell v. DOCCS*, No. 922CV0702 (DNH/ATB), 2023 WL 1861566, at *11 (N.D.N.Y. Feb. 9, 2023); *see also Rivera v. Pataki*, No. 04 CIV.1286(MBM), 2005 WL 407710, at *21 (S.D.N.Y. Feb. 7, 2005) ("Our Circuit has held that the filing of a false disciplinary report is a serious enough action that temporal proximity between an inmate grievance and the filing of a report is enough to state a retaliation claim."). Here, Plaintiff alleges that Tanea

issued the June 14, 2007 misbehavior report to punish Plaintiff for filing grievance FPT-17029-07, regarding his denial of employment outside of his cellblock on March 28, 2007 and that Tanea again retaliated against him by issuing the September 5, 2007 disciplinary report in response to grievances filed by Plaintiff against Tanea, including a grievance on June 20, 2007 and grievance FPT-17830-07 on August 22, 2007. Plaintiff's filing of grievances between one to three months prior to the filing of the alleged retaliatory disciplinary reports by Tanea is sufficient to support an inference of retaliation for purposes of summary judgment.

While Tanea denies any retaliatory motive or any suggestion that the misbehavior reports were based on false allegations, this does not end the Court's analysis of the causation element. *See Fabrizio v. Rielly*, No. 920CV0011 (GTS/ML), 2022 WL 18402299, at *10 (N.D.N.Y. Dec. 15, 2022) ("The fact that there is no evidence that Defendants made a statement of retaliatory intent is a factor to consider, but that Plaintiff cannot adduce evidence of such a statement is not fatal to his claim." (quoting *Young v. Shipman*, 18-CV-0782, 2020 WL 1329159, at *5 (N.D.N.Y. Mar. 23, 2020)), *report and recommendation adopted*, No. 920CV0011 (GTS/ML), 2023 WL 356204 (N.D.N.Y. Jan. 23, 2023). Nor is it dispositive at this stage that some of Plaintiff's grievances relate to conduct by Dignean and not solely to Tanea. *Fabrizio,* 2022 WL 18402299, at *10 (finding that plaintiff raised issues of material fact as to whether protected conduct of filing a grievance against two defendants "was a substantial or motivating factor" in another defendant's decision to take adverse action); *Stevens v. Duquette*, No. 920CV853 (BKS/ATB), 2022 WL 2292975, at *7 (N.D.N.Y. Apr. 19, 2022) ("As a general matter, it

is difficult to establish one defendant's retaliation for complaints against other correctional officers. Nevertheless, this general rule may not apply where there are indications of a retaliatory purpose—i.e., that the [officer's conduct] was meant to penalize [the plaintiff] for bringing past grievances, and to dissuade future grievances." (quotation and citations omitted)), *report and recommendation adopted*, No. 920CV853 (BKS/ATB), 2022 WL 2292047 (N.D.N.Y. June 24, 2022).

As explained further above, Plaintiff has raised issues of fact as to whether or not Defendants intentionally discriminated against him in refusing to permit employment outside of his cell block and those same issues of fact relate to his claim of retaliatory animus in filing misbehavior reports. This is not a case where the misbehavior reports relate to behavior separate and apart from the conduct complained about in the grievance; instead, the misbehavior reports seek to punish Plaintiff for refusing employment in the 9-Block. To the extent that Plaintiff may be able to prove to a jury that the employment-related decisions were grounded in race and religious-based discrimination, those conclusions could similarly support a claim for a retaliatory motive in filing misbehavior reports that arise from the same set of facts. As a result, for purposes of the instant motion, the Court concludes that this factor also weighs in Plaintiff's favor in suggesting retaliatory motive.

To be sure, the outcome of the disciplinary hearings weigh in Tanea's favor. Plaintiff was found guilty at both hearings and both were upheld on appeal, which raises an inference of non-retaliation. Similarly, Tanea has presented evidence that Plaintiff's

disciplinary history includes multiple violations, which also supports an inference of non-retaliation.

But overall, taking all of the facts in the light most favorable to Plaintiff, particularly in light of the temporal connection and other surrounding circumstances relating to the intertwined issues presented in both Plaintiff's grievances and the misbehavior reports, the Court concludes that material questions exist regarding the key facts underlying Plaintiff's claim that there exists a nexus between the grievance and the purportedly retaliatory action. Accordingly, Tanea's motion for summary judgment on Plaintiff's retaliation claim is denied.

## II. PLAINTIFF'S MOTION FOR MISCELLANOUS RELIEF

Plaintiff's motion for miscellaneous relief seeks three principle forms of relief: (1) that the Court resolve factual disputes and order Defendants to be bound by their factual and legal concessions; (2) that the Court take judicial notice of Defendants' "judicial admissions" at disciplinary hearings and in interrogatories to prevent them from asserting certain defenses at trial; and (3) that the Court provide notice to Defendants pursuant to New York Judiciary Law § 487 that any use of misconduct, fraud, misrepresentations will result in damages and sanctions by the Court. (Dkt. 139).

To the extent that Plaintiff asks the Court to make conclusive findings as to disputed factual matters, his motion is denied. Resolution of factual matters is the province of the jury, not the Court. *See Song v. Turtil*, No. 21 CV 2269 (VB), 2023 WL 2242771, at *5 (S.D.N.Y. Feb. 27, 2023) ("The Court 'is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried.'" (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625

F.3d 54, 60 (2d Cir. 2010)); *Ray v. Fariello*, No. 18 CIV. 11211 (KPF), 2021 WL 3810640, at *8 (S.D.N.Y. Aug. 26, 2021) ("Reconciliation of these disputed facts is a task properly left for a jury."). Similarly, to the extent that Plaintiff asks the Court to take judicial notice of purported admissions contained in disciplinary hearings and discovery responses, that relief is also not properly before the Court at this time and is denied. *See United States ex rel. Hart v. McKesson Corp.*, 602 F. Supp. 3d 575, 591 (S.D.N.Y. 2022) ("The Second Circuit has cautioned that 'the more critical an issue is to the ultimate disposition of the case, the less appropriate judicial notice becomes.'" (quoting *Pina v. Henderson*, 752 F.2d 47, 50 (2d Cir. 1985)); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) ("Because the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)."). Finally, the Court declines Plaintiff's request to warn Defendants of potential sanctions for misconduct. Defendants are aware of the Federal Rules of Civil Procedure and their obligations thereunder and the Court trusts that no additional warnings or admonitions are necessary at this time.

The Court does, however, address Plaintiff's argument relating to the FOM filed by Defendants in support of their summary judgment motion. Plaintiff argues that the document was never disclosed to him in response to multiple discovery requests and Defendants should not be permitted to rely on it in their summary judgment motion or at trial. (Dkt. 139 at 15-16). Defendants argue that they did not produce the document in response to Plaintiff's document request seeking "the program committee policy,

memorandum that inmates cannot program outside of their block, once positioned in that block as used by defendants in this complaint," because the FOM rule is "*not* a program committee policy" (emphasis in original) but instead is a "rule of general applicability." (Dkt. 149 at 3). They further contend that "it was only after counsel came to the realization that what was relevant to this case pertained to cell changes, not the programming committee, that counsel requested a search for the FOM pertaining to cell changes, from as far back as possible." (*Id*).[4] While it is difficult to conceive that Defendants were (1) unaware of the relevance of the policy to this case, which they take the position on summary judgment is the very policy providing support for Defendants' conduct, or (2) uncertain whether the policy was responsive to any of Plaintiff's document production requests, the instant record does not permit the Court to conclusively resolve either of these questions. However, Plaintiff is free to seek Defendants' preclusion of the use of this document at trial through a pre-trial motion in limine, at which time the Court will assess the propriety of Defendants' belated disclosure. *Sahiti v. Tarentum, Ltd.*, No. 19 CIV. 7377 (AT), 2021 WL 3115813, at *7 (S.D.N.Y. July 22, 2021) ("[G]enerally, courts have declined to reach the merits of motions in limine at the summary judgment stage."), *reconsideration denied*, No. 19 CIV. 7377 (AT), 2022 WL 657223 (S.D.N.Y. Mar. 4, 2022). This portion of Plaintiff's motion is accordingly denied without prejudice to renew.

---

4 Defendants' explanation does not address the failure to produce the document as part of their initial disclosures pursuant to Rule 26, which could serve as an additional basis to preclude Defendants' use of the document at trial.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is denied. Plaintiff's motion for miscellaneous relief is denied in part and denied without prejudice in part.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: March 13, 2023
Rochester, New York