UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOHN WILLIS RICHARD,

                Plaintiff,

v.

JENNIFER DIGNEAN and
THOMAS TANEA,

                Defendants.
_____

**DECISION AND ORDER**

6:11-CV-06013 EAW

*Pro se* plaintiff John Willis Richard ("Plaintiff") commenced this action on December 3, 2010, pursuant to 42 U.S.C. § 1983. (Dkt. 1). Plaintiff asserted various claims against several New York State Department of Corrections and Community Supervision ("DOCCS") personnel, alleging that they conspired to and committed various instances of discriminatory, retaliatory, and harassing conduct to unlawfully isolate his cellblock programming. (Dkt. 1).

On March 11, 2024, the case proceeded to a jury trial on two causes of action: (1) an Equal Protection claim against Jennifer Dignean ("Dignean") and Thomas Tanea ("Tanea") (collectively, "Defendants"); and (2) a First Amendment retaliation claim against Tanea. (Dkt. 206). On March 15, 2024, the jury found in Plaintiff's favor on the Equal Protection claim against Tanea, but otherwise found in Defendants' favor. (*Id.*). The jury awarded Plaintiff $1.00 in nominal damages. (*Id.*).

Pending before the Court is Tanea's motion for judgment as a matter of law, filed under Rule 50(b)(2) of the Federal Rules of Civil Procedure. (Dkt. 215). Plaintiff filed a

-1-

response to the motion on May 20, 2024.[1]  (Dkt. 218).  For the reasons explained below, Tanea's motion is denied.

## BACKGROUND

Plaintiff commenced this action on December 3, 2010, in the Northern District of New York.  (Dkt. 1).  On January 6, 2011, the case was transferred to this district.  (Dkt. 6).  On August 7, 2014, the Court granted in part and denied in part a motion to dismiss and dismissed all defendants except for Dignean and Tanea.  (Dkt. 22).  The Decision and Order held that Plaintiff's second cause of action, alleging violation of the Equal Protection Clause as against both Defendants, and Plaintiff's third cause of action, alleging a First Amendment retaliation claim against Tanea, remained the sole claims in the case.  (*Id.*).  On August 27, 2014, Defendants filed an answer (Dkt. 23), and the case was referred to former United States Magistrate Judge Marian W. Payson for all pretrial matters excluding dispositive motions (Dkt. 24).

On October 4, 2019, the Court issued a Decision and Order granting a motion to compel filed by Plaintiff, and imposing sanctions on Defendants for their failure to timely respond to Plaintiff's request for documents.  (*See* Dkt. 96).  Many documents sought by

---

[1]  Plaintiff asserts in response to Tanea's Rule 50(b) motion that the jury's verdict was erroneous.  To the extent Plaintiff is attempting to make his own motion for judgment as a matter of law, the Court notes that Plaintiff did not make any such motion at trial, and therefore he would be precluded from raising one now, *see McCarter & English, LLP v. Jarrow Formulas, Inc.*, 715 F. Supp. 3d 281, 303 (D. Conn. 2024) ("A party who does not move for judgment as a matter of law under Rule 50(a) is barred from challenging the verdict under Rule 50(b).  This procedural requirement 'may not be waived by the parties or excused by the district court.'" (internal citations omitted)), and any such motion also would be untimely, *see* Fed. R. Civ. P. 50(b) (time limit for making motion is "no later than 28 days after the entry of judgment").

Plaintiff in discovery had been destroyed after a five-year retention period pursuant to DOCCS policy. (*Id.*). Thereafter, on December 7, 2021, following an evidentiary hearing, the Court concluded that Plaintiff was entitled to an adverse inference instruction at trial, based on Defendants' spoliation of the aforementioned evidence—including cellblock move sheets and the logbook documenting inmate movement between blocks.[2] (*See* Dkt. 111).

Defendants filed a motion for summary judgment on July 29, 2022 (Dkt. 129), which the Court denied on March 13, 2023 (Dkt. 156). The case proceeded to trial on March 11, 2024. (*See* Dkt. 200). Following the close of Plaintiff's direct case, Defendants moved pursuant to Rule 50 for a directed verdict. As for the Equal Protection claim, Defendants argued that Plaintiff failed to prove he was treated differently than others similarly situated because of intentional or purposeful discrimination, and that Plaintiff failed to identify any such similarly situated individuals. The Court reserved decision on the motion. (*See* Dkt. 203). On March 15, 2024, the jury returned its verdict, finding in Plaintiff's favor on the Equal Protection claim against Tanea, but otherwise

---

[2] The Court's determination in this respect was based on what it perceived Plaintiff's argument to be at the time—*i.e.*, that Plaintiff should have been permitted to be housed in 9-block but to travel to 10-block for work—and therefore the cellblock move sheets showing the movement of inmates among the blocks in prison would have contained relevant information. But at trial, Plaintiff clarified that his claim was not that he should have been permitted to work in 10-block and live in 9-block, but that he should have been permitted to relocate to 10-block for purposes of his programming. Plaintiff maintained that the cellblock move sheets still would have included information relevant to his claim.

finding in favor of Defendants. (Dkt. 206). Plaintiff filed a Notice of Appeal on March 25, 2024. (Dkt. 213).[3]

Tanea filed a motion for judgment as a matter of law on April 11, 2024.[4] (Dkt. 215). Plaintiff filed a response to Tanea's motion on May 20, 2024. (Dkt. 218).

## DISCUSSION

### I. Legal Standard

Under Rule 50, the Court may grant a motion for judgment as a matter of law in a jury trial if it finds "that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party" opposing the request. Fed. R. Civ. P. 50(a). The same standard applies when, as here, a party renews its request for judgment as a matter of law after the trial is complete. *See* Fed. R. Civ. P. 50(b).

"In ruling on a motion for judgment as a matter of law, the court may not itself weigh credibility or otherwise consider the weight of the evidence; rather, it must defer to the credibility assessments that may have been made by the jury and the reasonable factual inferences that may have been drawn by the jury." *Williams v. Cnty. of Westchester*, 171 F.3d 98, 101 (2d Cir. 1999); *see also Stevens v. Rite Aid Corp.*, 851 F.3d 224, 228 (2d Cir. 2017) ("Judgment as a matter of law may not properly be granted

---

[3] Although Plaintiff has filed a Notice of Appeal, the Court retains jurisdiction to address Tanea's timely-filed Rule 50(b) motion. *See Iannone v. Frederic R. Harris, Inc.*, 941 F. Supp. 403, 409 (S.D.N.Y. 1996).

[4] Defense counsel stated in his motion papers that he ordered a copy of the trial transcript following the trial and reserved the right to supplement the motion upon receipt of the same. (*See* Dkt. 215-1 at 1). Defense counsel never supplemented the motion papers with the transcript.

under Rule 50 unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in his favor." (citation and alteration omitted)).

Accordingly, the Court may not grant judgment as a matter of law unless "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it." *Williams*, 171 F.3d at 101 (alterations omitted and quoting *Cruz v. Loc. Union No. 3 of the Int'l Bhd. of Elec. Workers,* 34 F.3d 1148, 1154 (2d Cir. 1994)); *see also Wierzbic v. Howard*, 331 F.R.D. 32, 45 (W.D.N.Y. 2019) ("In ruling on a motion for judgment as a matter of law, the motion will be granted only if (1) there is a complete absence of probative evidence to support a verdict for the non-movant or (2) the evidence is so strongly and overwhelmingly in favor of the movant that reasonable and fair minded men in the exercise of impartial judgment could not arrive at a verdict against him." (quotation and alteration omitted)), *aff'd*, 836 F. App'x 31 (2d Cir. 2020).  This "standard places a particularly heavy burden on the movant where, as here, the jury has deliberated in the case and actually returned its verdict in favor of the non-movant." *Morse v. Fusto*, 804 F.3d 538, 546 (2d Cir. 2015) (quotations omitted).

## II. Tanea's Motion

### A. Trial Testimony[5]

The evidence at trial established that in March 2007, Plaintiff was incarcerated on the 9-block housing unit at Five Points Correctional Facility ("Five Points"). At that time, Plaintiff met with Dignean, a Senior Corrections Counselor, regarding enrollment in a job program. Plaintiff specifically requested a porter or utilities job located in 10-block. Dignean refused to assign Plaintiff that job because pursuant to an unwritten policy, an inmate could not program for a porter or utilities job outside the cellblock in which he was housed. Dignean testified that she could not recall ever offering a prisoner a job outside his cellblock. Dignean further testified that there was no waiting list maintained for a porter or utilities job since it was a non-mandatory program—but in other facilities, a waiting list was maintained for a porter position.

Plaintiff testified that this unwritten policy of refusing inmates programming outside their cellblocks did not exist, and because he had been programming within DOCCS he knew such a policy did not exist. Plaintiff further testified that Dignean used offensive language with respect to his race and religion, including by calling him a "mixed race black mutt." Dignean testified that she used no such language, and that she was unaware of Plaintiff's religion when she met with him. Plaintiff refused all other jobs Dignean offered, including a porter or utilities job in 9-block.

---

[5]   As explained above, no official trial transcript has been prepared. Accordingly, the following recitation of the trial testimony is based on the Court's own recollection of the testimony.

In May 2007, Plaintiff and Dignean met again regarding job programming. Plaintiff demanded a porter or utilities job in 10-block, which Dignean refused to give him. Dignean again offered Plaintiff a porter or utilities job in 9-block, and Plaintiff again refused. Plaintiff testified that he felt offended by Dignean's refusal to give him a porter or utilities job in 10-block, and Dignean could not identify any written policy, so he wrote grievances against her. The grievances were denied, including on appeal, and Plaintiff testified that he believed the grievances were denied because the "higher ups" were protecting Dignean.

Thereafter, in June 2007, Plaintiff met with Tanea, a Senior Corrections Counselor, regarding job programming. Plaintiff requested a porter or utilities job in 10-block. Tanea informed Plaintiff that there were no porter or utilities jobs available in 10-block. Plaintiff testified that he knew Tanea was lying. Tanea refused to place Plaintiff on the waiting list, including because Plaintiff had previously been removed from 10-block because of a disciplinary issue. Tanea further testified that waiting lists were used only for mandatory programs. Tanea offered Plaintiff a porter or utilities job in 9-block, but Plaintiff refused that job. Tanea subsequently wrote Plaintiff a misbehavior report for refusing to take the jobs offered to him. Tanea testified that he did not retaliate against Plaintiff by filing the misbehavior report against him.

Tanea and Plaintiff met again on September 5, 2007. Plaintiff was offered a job in 9-block, which he refused. Plaintiff received another misbehavior report. Tanea further testified that he could recall no other inmate (apart from Plaintiff) who had requested a

porter or utilities job outside their cellblock, and he had never assigned another inmate any such job.

Plaintiff testified that because he had spent 32 years in prison, he was fully familiar with the procedures for programming and changing programs, and that he had been in the system for just as much time as Defendants. Plaintiff testified to multiple jobs he had received off a waiting list, and to occasions on which he was moved from one cellblock to another for his porter job at another correctional facility. Plaintiff testified that other individuals requesting a porter or utilities job outside their cellblock received such an assignment, but that he did not. Plaintiff identified one other individual—a man named John Stallworth—who received such a job. Plaintiff further testified that cellblock move sheets would have revealed the names of other individuals permitted to program outside of their cellblocks, but that because the move sheets were destroyed Defendants did not produce them in discovery. Plaintiff also testified that he was not removed from 10-block for violating a 10-block policy, but that he was written up from the mess hall program, which was in 10-block—and therefore he would have been permitted to participate in other programs in 10-block. Plaintiff testified that it was his belief that Tanea did not use a "block isolation" policy against anyone but Plaintiff, and that the cellblock move sheets, had they been produced by Defendants, would have provided further proof of Defendants' discriminatory actions.

### B. Equal Protection Claim

Tanea argues that he is entitled to judgment as a matter of law on Plaintiff's Equal Protection claim. Specifically, Tanea argues that at trial, Plaintiff failed to adduce

evidence of any similarly situated individual who was granted a job outside of their cellblock. (*See* Dkt. 215-1 at 5 ("Absent similarly situated individuals, Plaintiff cannot have made out a claim for an Equal Protection violation.")). In response, Plaintiff argues that because Defendants destroyed the cellblock move sheets, he could not call a witness to testify in support of his claims. (Dkt. 218 at 4, 18).[6]

The Equal Protection clause of the United States Constitution mandates equal protection under the law, and that similarly situated persons be treated equally. It is well-settled that racial or religious discrimination in prisoner job assignments violates the Equal Protection Clause. *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991); *see also Vazquez v. City of New York*, No. 121CV01573 (PAE)(VF), 2022 WL 2704763, at *14 (S.D.N.Y. June 17, 2022) ("Inmates can be assigned jobs, and removed from them, for virtually any reason, provided that such decisions are not based on the inmate's race or religion."), *report and recommendation adopted*, No. 21CIV1573 (PAE)(VF), 2022 WL 17370156 (S.D.N.Y. Dec. 2, 2022). "To establish an Equal Protection claim, a plaintiff 'must show that he was treated differently than other persons who were similarly situated and that such differential treatment was either without a rational basis (a "class of one" claim) or was motivated by an intent to discriminate on an impermissible basis (a selective enforcement claim).'" *Benjamin v. Town of Islip*, No. 20 CV 56 (ENV)(LB),

---

[6] In his response, Plaintiff refers to Tanea's arguments as "retarded," calls the motion "idiotic," and refers to defense counsel as a "doofus." (*See* Dkt. 218 at 2-4). This type of language is unhelpful and Plaintiff is cautioned that while he is entitled to challenge the legal and factual positions taken by Tanea, he may not engage in inflammatory name-calling.

2021 WL 8344132, at *6 (E.D.N.Y. Aug. 12, 2021) (quoting *Casciani v. Nesbitt*, 392 Fed. App'x 887, 888 (2d Cir. 2010)), *report and recommendation adopted*, No. 20-CV-56 (ENV) (LB), 2022 WL 1090608 (E.D.N.Y. Apr. 12, 2022).

At trial, Plaintiff alleged both a "class of one" theory and a "selective enforcement" theory in support of his Equal Protection claim. The Court explained to the jury that a "class of one" claim requires a plaintiff to prove that he was treated differently than similarly situated inmates and that the differing treatment was arbitrary or irrational. For a "selective enforcement" claim, a plaintiff must prove that he was treated differently than similarly situated inmates, and that the differing treatment was intentional and based on malice or bad faith. The Court further explained that, for the "similarly situated" element of the Equal Protection claim:

> Plaintiff must prove that there were similarly situated inmates, and that Plaintiff was treated differently than those other inmates by one or more of the Defendants. With respect to the similarly situated requirement, Plaintiff has the burden of proving that his circumstances were substantially similar to the circumstances of other inmates whose rights were not abused by defendants.

Plaintiff testified that he was treated differently than other inmates with respect to programming outside his cellblock at Five Points. Specifically, Plaintiff testified that while other inmates at Five Points were permitted to work outside the cellblocks in which they were housed, Plaintiff was not permitted to do so. In addition, Plaintiff identified one other inmate—John Stallworth—who was assigned a program outside his cellblock. Although Defendants testified that no one other than Plaintiff had requested a porter or utilities job outside their cellblock and they had never assigned an inmate such a job, the

jury was entitled to credit Plaintiff's testimony on this issue. *See, e.g.*, *Williams*, 171 F.3d at 101 (explaining that when considering a motion for judgment as a matter of law, "the court may not itself weigh credibility or otherwise consider the weight of the evidence," and that it must "defer to the credibility assessments that may have been made by the jury").

While Dignean relied primarily on the unwritten policy when refusing Plaintiff a 10-block porter or utilities job, Tanea testified that he refused Plaintiff a job in 10-block because there were no jobs available there. On the other hand, Plaintiff testified that the policy restricting inmates to programming in their housing blocks was "made up" by Defendants. A reasonable jury was permitted to infer from these differing accounts that Tanea's reason for refusing Plaintiff programming in 10-block was pretext, and that he refused Plaintiff a job in 10-block not based on the lack of jobs available but based on some other nefarious purpose.

Tanea also argues that Plaintiff "did not clearly articulate the reason [Plaintiff was denied a job on 10-block] was because of his race or religion." (Dkt. 215-1 at 4). At trial, Plaintiff testified that Dignean made racially and religiously offensive statements to him when refusing his program request, but he provided no such testimony about Tanea. Plaintiff testified that Dignean trained Tanea on inmate program placement, and that Tanea had acted to protect Dignean since she had trained him.

There are at least two issues with Tanea's argument. First, the Court instructed the jury that Plaintiff had both a class-of-one and a selective enforcement claim, and the former requires proof that the treatment was "arbitrary or irrational." Given the different

accounts of why Plaintiff was denied a porter or utilities job in 10-block, a reasonable jury could have concluded that Tanea's treatment of Plaintiff was arbitrary or irrational. Second, a plaintiff need not provide direct proof of racial or religious discrimination—rather, it is enough to show that the plaintiff was treated differently than others outside his protected class. *See, e.g.*, *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 606 (2d Cir. 2016) (explaining that "[b]ecause discriminatory intent is rarely susceptible to direct proof, a district court facing a question of discriminatory intent must make a sensitive inquiry into such circumstantial and direct evidence of intent as may be available" (quotations and citation omitted)); *see also Tse v. UBS Fin. Servs., Inc.*, 568 F. Supp. 2d 274, 291-92 (S.D.N.Y. 2008) (denying Rule 50 motion wherein defendant argued that the plaintiff failed to offer evidence of gender-based comments, noting that "the absence of direct evidence of bias does not establish the absence of a discriminatory animus").

Tanea's next point essentially concedes that "while a reasonable jury may potentially have credited Plaintiff's testimony that another incarcerated individual had requested a porter/utilities job outside their block an[d] received it," no reasonable jury could have attributed that conduct to Tanea specifically, rather than some other counselor at the facility. (Dkt. 215-1 at 4-5). The Court is not persuaded by this argument. As explained above, Plaintiff testified that the documents showing that other individuals programmed outside their cellblocks were destroyed and therefore he did not have access to them and could not use them as evidence. To that end, at trial, the Court gave the jury the following adverse inference instruction:

> Prior to the trial in this matter, this Court made a ruling that there were certain documents maintained at Five Points Correctional Facility during the relevant time period—namely, cell block move sheets—that were requested by the Plaintiff as part of discovery in this matter but not produced by the Defendants. The Court found that the Defendants were under a duty to preserve those documents because of this lawsuit, and they failed to do so. The Plaintiff claims the documents are relevant to his claims. The Defendants deny that the records would have contained any relevant evidence.
>
> I instruct you that you may, but are not required to, find that the documents would have been relevant to the Plaintiff's claims. I instruct you that you may, but are not required to, infer that had the documents been preserved and produced, they would have been favorable to the Plaintiff.

Plaintiff testified that Tanea did not use the cellblock isolation policy against any inmate other than Plaintiff, and had the cellblock move sheets been produced, there would have been evidence supporting this assertion.[7] Based on the adverse inference instruction given by the Court, a reasonable jury was permitted to infer that information pertaining to Tanea's treatment of similarly situated individuals was contained in the cellblock move sheets, that this information would have been relevant to Plaintiff's claims, and that this information would have been favorable to Plaintiff. *See, e.g.*, *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 535 (D. Md. 2010) (explaining that an adverse inference instruction "informs a jury that it may draw adverse inferences from the loss of evidence, or the destruction of evidence, by assuming that failure to preserve was because the spoliator was aware that the evidence would have been detrimental"

---

[7] Defendants testified at trial that the cellblock move sheets that were not preserved would not have included information pertaining to inmate programming. However, Plaintiff testified that the cellblock move sheets and the programming sheets were the same, and would have revealed information pertaining to inmates being moved for programming. As the factfinder, the jury was entitled to resolve this factual dispute.

(quotations, citation, and alteration omitted)); *see also Creative Res. Grp. of N.J., Inc. v. Creative Res. Grp., Inc.*, 212 F.R.D. 94, 107 (E.D.N.Y. 2002) ("[A]n adverse inference provides the necessary mechanism for restoring evidentiary balance. The inference is adverse to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss." (quotations and citations omitted)).

The proof of a similarly situated comparator at trial was not overwhelming. However, whether an individual is similarly situated is generally an issue of fact for the jury to decide, *see Brown v. Waterbury Bd. of Educ.*, 247 F. Supp. 3d 196, 209 (D. Conn. 2017), and given the "particularly heavy burden on the movant" on a motion for judgment as a matter of law, *Morse*, 804 F.3d at 546, the Court concludes that vacating the jury's verdict on the Equal Protection claim would not be proper. The Court reaches this conclusion particularly viewed through the lens of the adverse inference instruction given to the jury, from which they could infer that evidence favorable to Plaintiff existed as to this issue.

Other than providing case law on the general standard for an Equal Protection claim, Tanea cites no authority supporting his position that Plaintiff has failed to show a similarly situated comparator under the circumstances and that he is therefore entitled to judgment as a matter of law. For those reasons, Tanea's motion for judgment as a matter of law is denied. (Dkt. 215).

## **CONCLUSION**

For the foregoing reasons, Tanea's motion for judgment as a matter of law (Dkt. 215) is denied.

SO ORDERED.

                                                        ELIZABETH A. WOLFORD
                                                        Chief Judge
                                                      United States District Court

DATED:      March 13, 2025
                Rochester, New York